ENGLE, County Commissioner, v. DISTRICT COURT OF CARBON COUNTY et al.

No. 6077.   Decided December 5, 1938.   (85 P. 2d 627.)

*O. K. Clay*, of Price, for plaintiff.

*Marl D. Gibson, Therald N. Jensen* and *Fred W. Keller*, all of Price, for defendants.

HANSON, Justice.

The plaintiff filed in this court his verified petition for the writ of prohibition to prevent the defendants district court and the judge thereof from entering judgment on a jury verdict finding him guilty of trafficking and dealing in real estate to which Carbon County held tax titles, in violation of his duty as a County Commissioner of said County. The County Attorney was joined as a defendant to restrain him from further prosecuting the action. The issues for decision are presented by the defendant's demurrer to the petition for want of sufficient facts to constitute a cause of action or to entitle petitioner to any relief. Hence the peti-

tion and the documentary exhibits thereto constitute an agreed statement of facts upon which the judgment of this court is invoked. For convenience and clarity the petitioner will hereinafter be referred to as the accused and the defendant county attorney as the accuser.

The petition alleges the filing of an accusation against the accused in the defendant district court charging him with violations of Utah Revised Statutes 1933, 19-5-10, and thereafter an amended accusation, a demurrer and answer thereto by the accused, trial, jury's verdict of guilty upon two counts, not guilty on the rest; an order of court setting a day for imposing judgment; that the amended accusation states insufficient facts to state a cause of action or show jurisdiction of the subject matter; that if judgment be entered the accused will eo instanti be deprived of his office with consequent harm and damage which a subsequent reversal upon appeal will not repair; that he has no plain, speedy or adequate remedy at law. Hence prays the writ to avert the threatened mischief.

The amended accusation in the district court is attached to and made part of the petition in this court as an exhibit thereto. As the sufficiency of the facts stated therein is the point upon which our decision must turn, we here set out sufficient in substance thereof, but not in exact words, to present the ultimate question. The document is quite lengthy. Besides containing much matter relating to charges and transactions now set at rest by the jury's verdict, there is also much redundancy in stating those which remain. To copy it in full would too greatly burden this opinion. After weeding out all discarded and redundant matter, and condensing that which remains, the following fairly and substantially reflects the material averments of the amended accusation, viz.:

At all times mentioned the accused was a County Commissioner and defendant Gibson was County Attorney of Carbon County. On January 7, 1937, the accused at a full meeting of the Board of County Commissioners moved a sale

from the county to one Dan Collins (appearing openly for himself but secretly for himself and the accused) of a tract of 160 acres of land then owned by the County under a tax deed for delinquent unpaid taxes from the County Auditor, for a consideration of $160, the deed however to be executed to one B. A. McDonald, a step-son of Collins. The deed was executed and delivered upon said motion of the accused, adopted and passed by the board, and ever since Collins and the accused have been in the possession and control of said property.

Also that prior to said transaction the Board had received and refused an offer by Warner and Migliaccio to purchase only forty acres of said 160-acre tract for the sum of $500 plus a royalty of twenty cents a ton on all coal to be mined therefrom by the purchasers; and that the Board then refused to sell said tract for less than the full taxes due thereon in the sum of $7,688.84.

And that thereafter Jorgensen and Petit representing the L. D. S. Church had requested the Board to name a price at which said property could be purchased from the County, which the Board had promised to do after investigation, but had not done, nor any offer or effort made to sell the property on better terms than those given to Collins.

In further and separate paragraphs of said accusation it was further charged that:

On June 5, 1936, at a regular and full meeting of said Board of County Commissioners the accused moved and caused to be passed and adopted by the Board a motion to make a sale of a certain 80-acre tract of land in said County owned by the said County under an auditor's deed conveying tax title for non-payment of delinquent taxes, to one J. H. Debenham of Salt Lake City for the sum of $343.41. But that said Debenham, as the accused well knew, had not offered to purchase said property; that the pretended sale to him was not genuine but a device to enable the accused to use or obtain said property for his own. That the accused caused a quit claim deed to be executed from the county to

said Debenham as grantee of the property; and that thereafter the accused pretending to act as agent for Debenham, contracted to sell the same to one Elmer D. Babcock for the sum of $627; and that Babcock, as the accused well knew, had previously offered to purchase one half of said tract from the County for the sum of $300. That Babcock's offer had been refused as the accuser is informed, believes and charges, because the accused wished to obtain the property for himself.

Section 19-5-10 Utah R. S. 1933, which the accused is charged with violating, provides:

"No member of the board shall be interested, directly or indirectly, in any property purchased for the use of the county, or in any purchase or sale of property belonging to the county, or in any contract made by the board or other person on behalf of the county."

The remedy invoked by the accusation in the district court is that provided by section 1 of title 105, chapter 7, U. R. S. 1933, viz.:

"All officers not liable to impeachment shall be subject to removal for * * * malfeasance in office as in this chapter provided."

The ensuing sections of said chapter prescribe the accusation and the procedure thereon pursued in this case in the district court.

Petitioner contends that real property held by the County under tax titles does not "belong to the county" within the meaning or intent of said section 19-5-10 and that the acts charged are not within the prohibition thereof. It is contended that the quoted four words have a restricted meaning as denoting property acquired and used for governmental purposes, and do not refer to property acquired at tax sale not for use but as a means of collecting delinquent taxes therefrom. It is pointed out that the former class of property may only be sold in compliance with section 19-5-48 after thirty days published or posted notice, when no longer required for public use; while property held by tax titles may be sold, as in this case, during or

after the month of May following the tax deed, first at public sale, or if no bidder, then later at private sale on such price and terms as the Board may determine pursuant to R. S. U. 1933, 80-10-68, as amended by chapter 62, Laws of 1933.

The contention is unsound. Section 19-5-10 prohibits private interest of a Board member in sales of County property by the Board, no matter how or for what purpose the title was acquired by the County or for what reason its sale is decided upon and ordered by the Board. Section 19-4-3 confers power upon counties to acquire and hold land within its limits where "necessary and proper for county purposes, and on tax sales." There is no reason to hold that section 19-5-10 was intended to protect the county in respect of one class of its property and not the other, since the county could suffer loss with respect to sales of either class. The reason for the prohibition of the statute is that which underlies the law of fiduciaries everywhere. The County Commissioners by virtue of their offices occupy a trust relation to the county's property. The law does not permit a trustee to profit from the handling or sale of the trust property. He must be content with his stipulated compensation accepted when he takes charge of the trust. He cannot be allowed to function for the county as vendor and at the same time be interested, directly or indirectly, as purchaser, in the property to be sold. As agent for the vendor he should seek and obtain the best price and terms reasonably practicable, while as purchaser his interest would persuade him to sacrifice the interests of the vendor in order that he as purchaser may drive a more profitable bargain. "No man can serve two masters" is a maxim of old, but never more true than now. The officer who makes a sale of property held by the county for sale to reimburse its delinquent taxes, is like the county treasurer who conducts the sale in the first instance. He cannot be allowed to occupy inconsistent positions of purchaser and seller, in which his cupidity would draw him in one direction and his duty in another.

The fact that our statutes authorize a sale of property bought and held for use, when no longer needed, by one method, tax title lands by another, has no significance. The question is one of official dereliction in having become interested in a sale he was charged with a duty to make as a board member, on behalf of his principal, the county. The statute, 19-5-10, expressly prohibits and condemns as a malfeasance in office the acts charged which the accused could not lawfully or properly have done even had the statute not been enacted. In the face of the statute there should be no question as to its impropriety and illegality.

Under the admitted facts the accused became "interested, directly or indirectly in the sale of county property" and in "contracts made by the Board" of which he was a member, with Collins or McDonald and with Debenham whose names were used on the records to implement the transactions.

When land is sold to the county for delinquent taxes, and, at the expiration of redemption, a tax deed issues to the county, the latter takes title as we have often held, and it is immaterial to this result that the County, upon a resale for cash, must account for part of the price to the state, city, town or school district in which the land is located.

Petitioner urges that the practice is so common that we should almost take judicial notice of it, for county officers all over the state to purchase property held under tax titles at the May sales. In view of section 19-5-10 it is to be hoped that the practice is not common in the case of county commissioners at least whose duty to their counties must conflict with their private interest to drive as good a bargain for themselves as possible when dealing with and for the county.

It is urged that the accusation is deficient in failing to state that the acts charged were done knowingly and with a corrupt motive. Section 19-5-10 makes the transaction unlawful, which accused is presumed to know. And if it be

necessary that the acts be done "knowingly" and "corruptly" as urged by plaintiff, such was alleged █ in the amended accusation which charged that "said accused, wilfully and unlawfully violated Section 19-5-10." The accusation further alleged facts constituting a secretive plan of the accused to get the property for himself, which is inconsistent with innocent wrongdoing and shows wilfullness and guilty knowledge or bad motive.

It is urged that many of the allegations are but conclusions of law. We are of opinion that the amended accusation is good against a general demurrer and adequately alleges in substance the matters of which we have given a summary herein. Stating sufficient facts to constitute a cause of action it is also good against the jurisdictional objection. *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377.

The peremptory writ of prohibition is denied and the alternative writ is recalled. Costs to the defendants.

FOLLAND, C. J., and MOFFAT and LARSON, JJ., concur.