2010 UT 38

CITY OF GRANTSVILLE and the Town of Stockton, Plaintiffs, Appellants and Cross-appellees,

v.

REDEVELOPMENT AGENCY OF TOOELE CITY; City of Tooele; and the Tooele County Economic Development Corporation, Defendants, Appellees and Cross-appellants.

No. 20080373.

Supreme Court of Utah.

May 14, 2010.

Scott M. Lilja, Cassie J. Medura, Lisa B. Bohman, Salt Lake City, for appellants.

Phillip W. Dyer, Gainer M. Waldbillig, Carey A. Seager, Salt Lake City, for appellees.

PARRISH, Justice:

## INTRODUCTION

¶ 1 On February 2, 1994, the City of Tooele, the Tooele County Economic Development Corporation ("Corporation"), Tooele County, and the Tooele County Council of Governments ("Council of Governments") entered into an agreement pursuant to the Utah Interlocal Cooperation Act ("Interlocal Agreement" or "Agreement") relating to the redevelopment of property formerly belonging to the Tooele Army Depot ("Base Property" or "Property"). Appellants, the City of Grantsville and the Town of Stockton (collectively, "Grantsville"), filed suit alleging, among other claims, that the City of Tooele, the Redevelopment Agency of Tooele City ("Redevelopment Agency"), and the Corporation breached their contractual and fiduciary obligations to develop the Base Property or to share the profits from the sale of the Base Property as required by the Interlocal Agreement.

¶ 2 The district court granted summary judgment for the defendants on all claims. We reverse in part and affirm in part. We hold that the district court improperly dismissed Grantsville's contractual claims, including its reformation claim, because Grantsville raised a material issue of fact as to whether the Interlocal Agreement is integrated. But we affirm the district court's order dismissing Grantsville's remaining claims.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 This case arises from the closure and realignment of the Tooele Army Depot ("Depot"), a federal military installation located in Tooele County. To speed up economic recovery in communities where military bases are slated to close, the Defense Base Closure and Realignment Act of 1990, 10 U.S.C. § 2687 (2006), provides a process whereby former base property can be converted to new uses by public and private entities. To facilitate this process, Tooele City, Tooele County, and Grantsville each passed a resolution designating the Corporation as the sole entity to represent their respective interests to the Army in the base closure process. In turn, the Corporation formed the Base Reuse Commission for the purpose of formulating a base reuse plan. The Corporation also selected the Redevelopment Agency as the entity to acquire title to the Depot's real property.

¶ 4 Before the Base Reuse Plan was drafted and submitted for approval to the Army, Tooele County, Tooele City, the Redevelopment Agency, and the Council of Governments entered into the Interlocal Agreement. The Interlocal Agreement was entered pursuant to the Utah Interlocal Cooperation Act, Utah Code sections 11–13–101 through 11–13–314 (2007).[1] The Agreement provided that the Base Property would be annexed into Tooele City and that the Redevelopment Agency would acquire title to the Base Property. The Agreement further provided that the Redevelopment Agency acquire the Base Property "pursuant to the Base Reuse Plan and lease[ ] [it] and manage[ ] [it] on an interim basis, all in conformance with the terms and provisions of such agreements therefor as shall be negotiated by and between the Reuse Committee and the Army." Grantsville executed the Interlocal Agreement as a member of the Council of Governments.

¶ 5 After the execution of the Interlocal Agreement, the Corporation submitted the Base Reuse Plan to the Army for approval. The Base Reuse Plan included a scheme for realigning the Base Property to promote economic development and to create jobs. On March 27, 1996, the Redevelopment Agency submitted an application for an Economic Development Conveyance to the Army that, if granted, would allow the Army to transfer the Base Property to the Redevelopment Agency at no cost. On August 27, 1999, the Army deeded the Base Property to the Redevelopment Agency. The Redevelopment Agency then sold a portion of the Property for fifteen million dollars and paid the proceeds to Tooele City. Tooele City used the proceeds to finance a new city hall, an animal control facility, a new library, and to improve the city golf course clubhouse. Additionally, each year Tooele City transferred the interest generated from the proceeds to its general fund as payment for "contract services."

¶ 6 Grantsville opposed Tooele City's and the Redevelopment Agency's use of the Base Property and filed suit, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, reformation, breach of fiduciary duty, negligent misrepresentation, promissory estoppel, unjust enrichment, and constructive trust. Additionally, Grantsville requested an accounting for the proceeds received from the sale of the Base Property. Grantsville argued that Tooele City and the Redevelopment Agency had used the proceeds from the sale of the Base Property for Tooele City's sole benefit and thereby breached their duty to develop the Base Property for the benefit of the entire Tooele County community. Grantsville also argued that the Base Property remained largely unchanged from the time it had been listed on the closure list and that Tooele City's and the Redevelopment Agency's failure to develop it pursuant to the Base Reuse Plan was a breach of the Interlocal Agreement. The other governmental entities that were parties to the Interlocal Agreement—Tooele County and the Council of Governments—did not file suit.

¶ 7 The district court granted summary judgment to Tooele City and the Redevelopment Agency on all issues. Specifically, the district court held that the plain language of the Interlocal Agreement did not require the defendants to "share the proceeds" from the sale of the Base Property with Grantsville. Grantsville appealed. We affirm in part and reverse in part the district court's grant of summary judgment. We have jurisdiction pursuant to Utah Code section 78A–4–103(3) (2008).

## STANDARD OF REVIEW

¶ 8 "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions, and we view the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933. Additionally, "it is well established that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory

---

1. The Interlocal Cooperation Act has been amended and renumbered various times since the Agreement at issue in this case. Because these changes do not affect our analysis we cite to the current version throughout this opinion for clarity.

apparent on the record, even though such ground or theory differs from that stated by the trial court." *First Equity Fed., Inc. v. Phillips Dev., LC,* 2002 UT 56, ¶ 11, 52 P.3d 1137.

■ ¶ 9 Standing is a question of law that we review for correctness, "affording deference for factual determinations that bear upon the question of standing, but minimal deference to the district court's application of the facts to the law." *Cedar Mountain Envtl., Inc. v. Tooele County,* 2009 UT 48, ¶ 7, 214 P.3d 95 (internal quotation marks omitted).

## DISCUSSION

¶ 10 The issues to be resolved in this appeal are: (I) whether Grantsville has standing to bring suit for claims arising under the Interlocal Agreement, (II) whether the district court erred in granting summary judgment on Grantsville's claim that the Redevelopment Agency and Tooele City breached the Interlocal Agreement, (III) whether the district court erred in dismissing Grantsville's fiduciary duty and equitable claims, (IV) whether the district court erred in denying Tooele City and the Redevelopment Agency's motion to amend their complaint, and (V) whether the district court erred in denying Grantsville's motion for a change of venue. We address each issue in turn.

## I. GRANTSVILLE LACKS TRADITIONAL STANDING BUT HAS ALTERNATIVE STANDING TO RAISE CLAIMS UNDER THE AGREEMENT

¶ 11 Initially, we must determine whether Grantsville has standing to bring suit against the Redevelopment Agency and Tooele City for allegedly failing to develop the Base Property. *See Ball v. Pub. Serv. Comm'n,* 2007 UT 79, ¶ 45, 175 P.3d 545 ("Prior to deciding the substantive questions presented by the parties, this Court must ascertain whether it has subject matter jurisdiction . . . ." (internal quotation marks omitted)); *Jones v. Barlow,* 2007 UT 20, ¶ 12, 154 P.3d

808 ("[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." (alteration in original) (internal quotation marks omitted)).

■ ¶ 12 A party can establish traditional or alternative standing. *See Cedar Mountain Envtl., Inc. v. Tooele County,* 2009 UT 48, ¶ 9, 214 P.3d 95. We hold Grantsville lacks traditional standing but has alternative standing in this dispute.

*A. Grantsville Does Not Satisfy Traditional Standing Requirements Because It Has No Legal Interest in the Interlocal Agreement*

■ ¶ 13 Grantsville argues that it has a legal interest in the dispute and thus has traditional standing because it "consented to being represented in the base closure process, passed resolutions authorizing such representation and signed the Interlocal Agreement for the purpose of implementing the process." We disagree.

■■ ¶ 14 Utah's traditional standing test requires a showing of injury, causation, and redressability. *See Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 21, 148 P.3d 960. Under the first prong of the traditional test, "the petitioning party must allege that it has suffered or will 'suffer[ ] some distinct and palpable injury that gives [it] a personal stake in the outcome of the legal dispute.'" *Id.* ¶ 19 (alterations in original) (quoting *Jenkins v. Swan,* 675 P.2d 1145, 1150 (Utah 1983)). Additionally, the party seeking relief must establish that it has a "legally protectable interest in the controversy." *Hogs R Us v. Town of Fairfield,* 2009 UT 21, ¶ 8, 207 P.3d 1221 (internal quotation marks omitted). And with the exception of those who are third-party beneficiaries or assignees, only those who are a party to a contract have a legally protectable interest in that contract.[2] *See Holmes Dev., LLC v. Cook,* 2002 UT 38, ¶ 53 and n. 6, 48 P.3d 895 (stating that generally only a party to a contract has an interest in the contract

---

**2.** Because Grantsville does not argue it has standing as a third-party beneficiary, we do not address this issue. *See* Utah R.App. P. 24(a)(9),

(c); *State v. Lucero,* 2002 UT App 135, ¶¶ 8–9, 47 P.3d 107 (refusing to review an issue that was inadequately briefed).

and thus standing to sue); *see also Harper v. Great Salt Lake Council, Inc.*, 1999 UT 34, ¶ 20, 976 P.2d 1213 (holding that an individual who is not a party to a contract does not generally have standing because the individual has no cognizable interest in the agreement).

¶ 15 Here, Grantsville does not have traditional standing because it is not a party to the Interlocal Agreement. Although Grantsville signed the Interlocal Agreement, it did not do so as a party to the Agreement. Rather, it did so to acknowledge its support for the decision of the Council of Governments to enter into the Agreement. The Interlocal Agreement specifically names the four contracting parties: Tooele County, Tooele City, the Redevelopment Agency, and the Council of Governments. But nowhere in the Agreement is Grantsville listed as a contracting party. Additionally, Grantsville's signature appears, along with other Council of Government members, below the heading "Tooele County Council of Governments." Thus, Grantsville's consent to the redevelopment process was in its capacity as a member of the Council of Governments and not as a party to the Interlocal Agreement. As such, it lacks a protectable interest in the Interlocal Agreement and is therefore without traditional standing to bring suit.

## B. Grantsville has Alternative Standing Because It Is an Appropriate Party to Bring Suit and It Raises an Issue of Public Importance

¶ 16 Having concluded that Grantsville lacks traditional standing, we turn to the question of alternative standing. A party that fails to meet traditional standing requirements may nonetheless qualify for alternative standing if the party is (1) an appropriate party to bring suit and (2) the issue being presented is one of "sufficient public importance to balance the absence of the traditional standing criteria." *Sierra Club*, 2006 UT 74, ¶ 41, 148 P.3d 960. We hold that Grantsville has alternative standing because the redevelopment of the Base Property is a matter of public importance and Grantsville is an appropriate party to raise the claim that the Interlocal Agreement has been breached.

¶ 17 First, Grantsville is an appropriate party to litigate the issue of whether the Interlocal Agreement has been breached. Under alternative standing analysis, a party is an appropriate party if it has " 'the interest necessary to effectively assist the court in developing and reviewing all relevant legal and factual questions' " and the issues the party wishes to litigate are " 'unlikely to be raised' if the party is denied standing." *Id.* ¶ 36 (quoting *Jenkins*, 675 P.2d at 1150).

¶ 18 In *Sierra Club*, we held that the Sierra Club was an appropriate party because it had both the experience and the interest in environmental litigation to effectively assist the court in determining whether a proposed power plant complied with applicable federal and state environmental law. *Id.* ¶ 42. Similar to the Sierra Club, as a municipality and as a member of the Council of Governments participating in the negotiations, Grantsville has sufficient interest and experience with the Interlocal Agreement to help this court determine whether the terms of the Interlocal Agreement have been breached. As a member of the Tooele County community, Grantsville is interested in ensuring enforcement of any agreement to develop the Base Property for the benefit of the entire community. And as a signator to the Interlocal Agreement, in its capacity as a member of the Council of Governments, Grantsville has knowledge regarding the terms of the Interlocal Agreement and the context in which it was executed. Additionally, as a municipal government and a member of an interlocal entity, Grantsville is knowledgeable about how state and local laws affect the Agreement. Moreover, because the Council of Governments refuses to bring suit in this matter, the issues Grantsville raises will not likely be raised if Grantsville is denied standing.

¶ 19 Second, the question of whether the Interlocal Agreement has been breached is a matter of public importance. The redevelopment of the Base Property is of significant importance to the Tooele County community. The Depot's closure negatively affected not only Tooele City, but also the surrounding

communities. If Tooele City and the Redevelopment Agency breached the Interlocal Agreement by failing to share the proceeds of the sale of the Base Property or to redevelop the Base Property for the benefit of the entire community, the public has an interest in having this issue litigated. We therefore conclude that while Grantsville lacks traditional standing, Grantsville has alternative standing in this dispute because it is an appropriate party and raises an issue of public importance.

## II. THE DISTRICT COURT ERRED IN DISMISSING GRANTSVILLE'S CLAIMS FOR BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

¶ 20 Having determined that Grantsville has standing to bring suit, we next address whether the district court erred in dismissing Grantsville's breach of contract claims. The district court held that the Redevelopment Agency and Tooele City did not breach the Interlocal Agreement because "[a]ll of the parties ... agreed that the Interlocal Agreement is unambiguous and is integrated" and because Grantsville did not "identif[y] any sharing of the proceeds clause contained within the four corners of the Interlocal Agreement."

¶ 21 We conclude that summary judgment was improper on the issues of integration and ambiguity and hold that the district court erred in dismissing Grantsville's breach of contract claim. The district court dismissed Grantsville's breach of contract claim after construing the claim as limited to the proposition that Tooele City and the Redevelopment Agency breached the agreement by failing to "share the proceeds" from the sale of the Base Property. But Grantsville's complaint gave adequate notice to defendants that Grantsville's breach of contract claim was based on the broader theory that defendants breached the Agreement by failing to develop the Base Property for the benefit of the entire community and that defendants improperly retained the proceeds from the sale of the Property. We therefore hold that summary judgment was improper.

## A. The District Court Erred in Granting Summary Judgment on the Issue of Integration

¶ 22 The district court erred in granting summary judgment on Grantsville's breach of contract claim because Grantsville did not concede the issue of integration and because Grantsville raised a material issue of fact as to whether the Interlocal Agreement was integrated.

¶ 23 We first address whether Grantsville conceded the issues of integration and ambiguity. We are unable to determine from the district court's order the basis for its conclusion that Grantsville conceded these issues. In moving for summary judgment, Grantsville specifically argued that the Interlocal Agreement is not integrated and is ambiguous. And although Tooele City and the Redevelopment Agency argue that Grantsville conceded the integration and ambiguity issues by filing a cross motion for partial summary judgment, the mere filing of a cross motion for summary judgment does not amount to a concession because parties are allowed to argue alternative theories. *See* Utah R. Civ. P. 8(a); *Parrish v. Tahtaras,* 7 Utah 2d 87, 318 P.2d 642, 645 (1957) ("[A]lternate remedies ... may be pleaded in alternative form."); *see also Amjacs Interwest, Inc. v. Design Assocs.,* 635 P.2d 53, 55 (Utah 1981) (" '[A] party may make concessions for the purpose of his motion that do not carry over and support the motion of his adversary.' " (quoting 6 Moore's Federal Practice para. 56.13 at 341 to 344 (2nd ed. 1976))).

¶ 24 Having concluded that Grantsville did not concede the issue of integration, we now address whether the Interlocal Agreement is integrated as a matter of fact. An integrated agreement is defined as a " 'writing ... constituting a final expression of one or more terms of an agreement.' " *Tangren Family Trust v. Tangren,* 2008 UT 20, ¶ 12, 182 P.3d 326 (quoting Restatement (Second) of Contracts § 209 (1981)). When a contract includes an integration clause, the contract is presumed to contain the whole agreement and parties may not rely on extrinsic evidence in attempting to prove that the contract is not integrated. *Id.* ¶ 17.

However, in the absence of an integration clause, when a party to a contract insists that the contract is not integrated, a "court must determine as a question of fact whether" the writing constituted a "final and complete expression of their bargain." *Bullfrog Marina, Inc. v. Lentz*, 28 Utah 2d 261, 501 P.2d 266, 270 (1972), *overruled on other grounds by Tangren*, 2008 UT 20, 182 P.3d 326; *see also Tangren*, 2008 UT 20, ¶ 10, 182 P.3d 326 ("Whether a contract is integrated is a question of fact. . . ."). Whether a writing is final and complete may be proved by extrinsic evidence to "show the circumstances under which the agreement was made and the purpose for which the instrument was executed." *Tangren*, 2008 UT 20, ¶ 16 n. 20, 182 P.3d 326 (internal quotation marks omitted).

¶ 25 Because the Interlocal Agreement does not contain an integration clause, extrinsic evidence may be introduced to prove whether the Agreement is integrated. Summary judgment is not appropriate on the issue of integration if a question of fact exists as to whether an agreement constitutes a final expression of the parties' bargain. *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 24 n. 10, 48 P.3d 918. In *Peterson*, we stated that summary judgment was inappropriate on the issue of contractual integration when a question of fact existed as to whether the agreement incorporated documents that did not exist at the time the agreement was executed. *Id.* ¶ 24 n. 10. Although the plaintiff in *Peterson* accepted benefits under the allegedly modified agreement, we concluded that because the documents were not referenced in the original agreement and because one of the other parties to the agreement testified that the agreement was not integrated, a question of fact existed as to integration, and therefore we held summary judgment was inappropriate. *Id.*

¶ 26 As was the case with the agreement in *Peterson*, the question of whether the Interlocal Agreement is integrated is not entirely clear. The Interlocal Agreement provides the following:

> [Base Property] shall be acquired pursuant to the Base Reuse Plan and managed on an interim basis, all in conformance with the terms and provisions of such agreements therefor as shall be negotiated by and between the Reuse Committee and the Army, the applicable provisions of federal base closure law, and the provisions of the Utah Neighborhood Development Act.

¶ 27 The Interlocal Agreement's reference to the Base Reuse Plan and to federal base closure law could reasonably be interpreted to suggest that the parties intended to incorporate the Base Reuse Plan and federal base closure law into the Agreement.[3] This position is supported by Grantsville's argument that, at the time the Interlocal Agreement was executed, the parties were in the early stages of the base reuse process. At this stage, the parties needed to designate a single entity to represent the community and interface with the Army. And because the Base Reuse Plan was not even in existence at this time, it could not be incorporated into the Agreement until a future date. Additionally, the fact that the Agreement does not contain a provision regarding what development, if any, is required on the Base Property lends support to Grantsville's argument that these future documents were intended to become part of the Agreement.

¶ 28 Tooele City and the Redevelopment Agency argue that the Interlocal Agreement is integrated and they present evidence that reasonably supports that position. For instance, Tooele City and the Redevelopment Agency argue that summary judgment was appropriate regarding the issue of integration because the drafter of the Interlocal Agreement testified that the Interlocal Agreement "expressly 'confirms' the understanding, intents, purposes, and terms of

---

**3.** Tooele City and the Redevelopment Agency argue that the Federal Base Closure and Realignment Act cannot be integrated into the Agreement because the act does not allow for a private right of action. *See* 32 C.F.R. § 175.4 (1997) (The Federal Base Closure and Realignment Act "does not create any rights or remedies and may not be relied upon by any person, organization, or entity to allege a denial of any rights or remedies"). Whether federal base closure law includes a private cause of action is irrelevant. Grantsville is not bringing a claim under the Act, but rather is bringing a contractual claim asserting that defendants breached the Interlocal Agreement by failing to act in accordance with the Act.

the Agreement." Tooele City and the Redevelopment Agency argue that the Agreement contains all of the terms required by the Interlocal Cooperation Act and that "[t]here are no other written agreements concerning the Base Property involving the Plaintiffs."[4] Additionally, they claim that Grantsville does not present evidence of any prior or contemporary discussion regarding the Interlocal Agreement that contests integration.

¶ 29 While Tooele City and the Redevelopment Agency point to facts that support their position that the Interlocal Agreement is integrated, Grantsville presented sufficient contrary evidence in its opposition to summary judgment to create an issue of material fact on the integration issue. We therefore hold that the district court's grant of summary judgment on the issue of integration was improper and remand the issue of integration to the district court. On remand, in determining whether the Interlocal Agreement is integrated, the district court may rely on any relevant evidence, including parol evidence.

### B. The District Court Erred in Granting Summary Judgment on the Question of Contractual Ambiguity

 ¶ 30 Having determined that the district court erred in granting summary judgment on the issue of integration, we next turn to the question of whether the Interlocal Agreement is ambiguous. Because the question of ambiguity cannot be determined until a finding is made as to integration, the district court's holding that the Interlocal Agreement was unambiguous was premature

and must be revisited on remand. *See Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 (stating that the issue of whether parol evidence is admissible requires that the court first determine "whether the agreement is integrated," and "[i]f the court finds the agreement is integrated, then parol evidence may be admitted only if the court makes a subsequent determination that the language of the agreement is ambiguous" (internal quotation marks omitted)).

 ¶ 31 "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (internal quotation marks omitted). Contractual ambiguity can occur when (1) there is "facial ambiguity with regard to the language of the contract" and (2) when there is "ambiguity with regard to the intent of the contracting parties." *Id.* The first situation "presents a question of law to be determined by the judge." *Id.* The second situation "presents a question of fact where, if the judge determines that the contract is facially ambiguous, 'parol evidence of the parties' intentions should be admitted.'" *Id.* (quoting *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991)).

¶ 32 On remand, the district court's ambiguity analysis should include two steps. First, the district court should consider any "relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity" in the terms of the Interlocal Agreement. *Id.* ¶ 31. In making this deter-

---

4. Tooele City and the Redevelopment Agency argue that because there is no written agreement obligating Tooele City or the Redevelopment Agency to share the proceeds or develop the Base Property, the Interlocal Agreement is per se integrated. To support their argument, defendants cite to Utah Code section 10-6-138, which provides that "[t]he city recorder shall countersign all contracts." Utah Code Ann. § 10-6-138 (2007). This argument is unpersuasive. A failure to comply with section 10-6-138 cannot be the sole basis for defeating a contractual claim. *See Midwest Realty v. City of W. Jordan*, 541 P.2d 1109, 1111 (Utah 1975) (indicating that although no written contract existed, there was "a sufficient memorandum of the agreement contained in the minutes of the city council" to find that

such a contract existed); *see also Canfield v. Layton City*, 2005 UT 60, ¶ 17, 122 P.3d 622 (observing that an implied in fact employment contract with a governmental entity "may arise from ... the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances" (internal quotation marks omitted)).

Tooele City and the Redevelopment Agency also argue that compliance with the Interlocal Cooperation Act is per se evidence of integration. We are unable to find nor do defendants point us to any provision in the Interlocal Cooperation Act that states or implies that an agreement executed in compliance with the Act is conclusively integrated.

mination, "[t]he only evidence relevant ... is evidence of facts known to the parties at the time they entered" into the Interlocal Agreement. *Peterson,* 2002 UT 43, ¶ 19, 48 P.3d 918 (internal quotation marks omitted). After reviewing the evidence offered, the court may then make a finding that the Interlocal Agreement is ambiguous "only if the competing interpretations" offered by the parties "are reasonably supported by the language of the [Interlocal Agreement]." *Daines,* 2008 UT 51, ¶ 31, 190 P.3d 1269 (internal quotation marks omitted). "If after considering such evidence the court determines that the interpretations contended for are reasonably supported by the language of the [Interlocal Agreement], then extrinsic evidence is admissible to clarify the ambiguous terms." *Peterson,* 2002 UT 43, ¶ 19, 48 P.3d 918 (internal quotation marks omitted). But "if after considering such evidence, the court determines that the language of the [Interlocal Agreement] is not ambiguous, then the parties' intentions must be determined solely from the language of the [Agreement]." *Id.* (internal quotation marks omitted).

¶ 33 In summary, the district court erred in granting summary judgment on the question of whether the Interlocal Agreement is ambiguous. We therefore remand the issue of contractual ambiguity to the district court.

*C. The District Court Erred in Holding That Grantsville Did Not Properly Plead the Basis of Its Breach of Contract Claim in Its Complaint*

■ ¶ 34 The district court dismissed Grantsville's claims for breach of contract and the implied covenant of good faith and fair dealing because it concluded the plain language of the integrated Agreement did not entitle Grantsville to any share of the proceeds from the sale of the Base Property. However, Grantsville argues that its breach of contract claim was based on the broader premise that Tooele City and the Redevelopment Agency breached the Interlocal Agreement by failing to conduct any development on the Base Property and by improperly retaining the proceeds from its sale. The district court refused to consider these claims because it concluded that Grantsville did not allege them in its complaint. We disagree.[5]

■ ¶ 35 Under our liberal notice pleading standard, all that is required is a "short and plain statement ... showing that the pleader is entitled to relief" and "a demand for judgment for the relief." Utah R. Civ. P. 8(a). Under this standard, "[t]he plaintiff must only give the defendant 'fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved.'" *Canfield v. Layton City,* 2005 UT 60, ¶ 14, 122 P.3d 622 (quoting *Williams v. State Farm Ins. Co.,* 656 P.2d 966, 971 (Utah 1982)).

¶ 36 Grantsville's complaint asserts that

[i]t was the intent ... that the conveyance of [the Base Property] ... be for the general benefit of each and all signatories of the [Interlocal Agreement] ... and not for the special or specific benefit of the Tooele [Redevelopment Agency]. The Department of Army would not have authorized the [Base Property] to be conveyed and transferred to the [Redevelopment Agency] had they known that the benefits and values of the property were not to be fairly and equitably apportioned to and among all of the municipalities and governmental agencies signing the [Interlocal Agreement] who were impacted by the Depot closure.

Neither [Grantsville], nor any other party or agency of government to the 1994 Agreement, other than Tooele City and its Redevelopment Agency, have received any remuneration, value, or benefit from the Tooele Army Base realignment and ancil-

---

5. Grantsville filed a Motion for Leave to File Amended Complaint with the district court to clarify that its breach of contract claim was based in part on the position that Tooele City and the Redevelopment Agency failed to develop the Base Property and improperly retained the proceeds from the sale of the Base Property. While the district court never addressed this issue, it implicitly denied Grantsville's motion to amend by granting summary judgment for the defendants. Because we conclude that Grantsville's complaint gave sufficient notice of its alternative theories for breach, we need not address the district court's denial of Grantsville's motion to amend.

lary property conveyance stemming from the Depot closure.

Although somewhat vague, we conclude that this language was sufficient to give Tooele City and the Redevelopment Agency notice that Grantsville's contractual claims were premised on the complaint that defendants retained all of the benefits from the conveyance of the Base Property and did not proceed in a manner that would benefit the entire community.[6]

¶ 37 Our conclusion is buttressed by the fact that the Redevelopment Agency and Tooele City received further notice of the nature of Grantsville's contractual claims during discovery. For instance, in its answer to interrogatories, Grantsville stated that defendants breached the Interlocal Agreement by failing to "promote economic development and rapid job creation in each of the communities that were adversely affected by the closure of the Tooele Army Depot" and by failing to "implement ... a local planning process which would consider and address the needs of the entire community."

¶ 38 Based on the language of Grantsville's complaint, we conclude that the district court erred in concluding that Grantsville's contractual claims were limited to whether Tooele City and the Redevelopment Agency failed to "share the proceeds" from the sale of the Base Property. We therefore hold that the district court erred in not considering whether Tooele City and the Redevelopment Agency breached the Interlocal Agreement by improperly retaining the proceeds and by failing to perform economic development on the Base Property.[7]

¶ 39 In summary, we hold that the district court erred in granting summary judgment on the question of whether the Interlocal Agreement is integrated and ambiguous. We also hold that the district court erred in refusing to consider whether defendants breached the Interlocal Agreement by improperly retaining the proceeds or failing to conduct economic development on the Property. We therefore remand these issues of integration, ambiguity, and breach of contract, including breach of the implied covenant of good faith and fair dealing, to the district court.

## III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON GRANTSVILLE'S CLAIMS FOR BREACH OF FIDUCIARY DUTY AND ON GRANTSVILLE'S EQUITABLE CLAIMS

¶ 40 Having analyzed Grantsville's contractual claims, we now turn to Grantsville's claims for reformation, breach of fiduciary duty, unjust enrichment, constructive trust, and accounting.[8] Because the issue of whether defendants breached the Interlocal

6. Tooele City and the Redevelopment Agency argue that Grantsville's new "unalleged claims implicate additional statutory and constitutional limitations and defenses." To support their argument, however, defendants merely cite to Utah Constitution article XI, section 5, article XIV sections 3 and 4, and various sections of the Utah Code. "[I]t is well established that a reviewing court will not address arguments that are not adequately briefed." Ellis v. Swensen, 2000 UT 101, ¶ 17, 16 P.3d 1233 (internal quotation marks omitted); see also State v. Thomas, 961 P.2d 299, 305 (Utah 1998) (refusing to address arguments that were supported by a mere citation to the United States and Utah Constitutions and to a single decision by this court but provided no "[a]nalysis of what this authority requires and of how the facts of [the present] case satisfy these requirements"). Because Tooele City has provided no analysis of the constitutional authority to which it cites or how the facts of the case support its argument, we do not address this issue.

7. To support its claim that defendants breached the Interlocal Agreement, Grantsville cites to events that occurred after it filed its 2001 complaint. On remand, Grantsville may file a motion to supplement its complaint to include these post–2001 actions. See Utah R. Civ. P. 15(d) ("Upon motion of a party the court may ... permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.").

8. Grantsville's complaint included claims of promissory estoppel and negligent misrepresentation, which were also dismissed on summary judgment. Because Grantsville does not challenge the dismissal of these claims on appeal, we do not address them. See Allen v. Friel, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision.").

Agreement remains to be resolved on remand, a determination regarding reformation is premature. We therefore remand the issue of reformation to the district court. As to the remainder of Grantsville's claims, we hold that the district court correctly dismissed these claims as a matter of law.

*A. The District Court Correctly Dismissed Grantsville's Claim for Breach of Fiduciary Duty Because the Redevelopment Agency and the Corporation Never Consented to Act as Grantsville's Fiduciary*

¶ 41 The district court dismissed Grantsville's claim for breach of fiduciary duty because Grantsville failed to come forward with any facts establishing a fiduciary relationship between the Corporation and Grantsville. Grantsville argues that the district court's holding was erroneous because its decision ignored the Interlocal Agreement, the Base Reuse Plan, multiple resolutions, and federal base-closure law, all of which expressly stated or implied that the Corporation and Redevelopment Agency would act as an agent for the Tooele County community. Because these documents do not establish a fiduciary relationship between Grantsville and the Corporation, we conclude that the district court correctly dismissed Grantsville's claim for breach of fiduciary duty.

¶ 42 A fiduciary relationship " 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Wardley Corp. v. Welsh,* 962 P.2d 86, 89 (Utah Ct.App.1998) (quoting Restatement (Second) of Agency § 1(1) (1958)). The manifestation of consent to form an agency relationship can be established by contract or implied by the factual circumstances. *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.,* 786 P.2d 1326, 1332 (Utah 1990).

¶ 43 Grantsville presents no evidence that the Corporation or the Redevelopment Agency consented to act as Grantsville's agent. While Grantsville argues that the Interlocal Agreement and the Base Reuse Plan prove that the Corporation and Redevelopment Agency consented to an agency relationship, Grantsville is not a party to these documents. Nor do any of the documents or laws on which Grantsville relies obligate the Corporation or Redevelopment Agency to specifically act on Grantsville's behalf.

¶ 44 Additionally, the Corporation's consent to a fiduciary relationship cannot be inferred from the factual situation. Such a relationship would suppose that the Corporation could act on behalf of each member of the Council of Governments despite their potentially competing interests in the development of the Base Property. But the notion of representing multiple principals with inconsistent interests contradicts the very essence of a fiduciary relationship. *See Olson v. Gaddis Inv. Co.,* 85 Utah 430, 39 P.2d 744, 747 (1935) (stating that a fiduciary cannot serve as the agent of "two masters" where their interests may be inconsistent); *see also Banberry Dev. Corp.,* 786 P.2d at 1333 ("A fiduciary is a person with a duty to act primarily for the benefit of another." (internal quotation marks omitted)); *Engle v. Dist. Court,* 96 Utah 245, 85 P.2d 627, 629 (1938) (same); *Bear River Valley Orchard Co. v. Hanley,* 15 Utah 506, 50 P. 611, 614 (1897) (same).

¶ 45 Because there is no evidence that the Corporation consented to act as Grantsville's agent, no fiduciary relationship was formed, and the district court correctly dismissed Grantsville's claim for breach of fiduciary duty as a matter of law.

*B. Grantsville's Claim for Unjust Enrichment Fails Because Grantsville Conferred No Benefit on the Defendants*

¶ 46 Grantsville argues that the district court erred in dismissing its claim for unjust enrichment.[9] A successful claim for unjust enrichment requires that a plaintiff establish three elements.

9. The district court concluded that Grantsville's claim for unjust enrichment failed because a valid contract existed between the parties. Because we conclude that Grantsville was not a party to the Interlocal Agreement, we affirm the district court's holding on other grounds. *See First Equity Fed., Inc. v. Phillips Dev., LC,* 2002 UT 56 ¶ 11, 52 P.3d 1137.

First, there must be a benefit conferred by one person on another. Second, the conferee must appreciate or have knowledge of the benefit. Third, there must be acceptance or retention by the conferree of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Allen v. Hall*, 2006 UT 70, ¶ 26, 148 P.3d 939.

¶ 47 Grantsville argues that "by entering into the Interlocal Agreement, [Grantsville] conferred the benefit on the defendants of allowing the [Corporation] and the [Redevelopment Agency] to take control of the base closure process." However, Grantsville's consent cannot be deemed to confer a benefit because Grantsville was not a party to the Interlocal Agreement. Thus Grantsville's consent was not required. Therefore, the district court was correct in dismissing Grantsville's claim for unjust enrichment. Moreover, because Grantsville bases its claim for constructive trust and its request for an accounting on the theory that defendants were unjustly enriched, these claims must also fail. *See Mattes v. Olearain*, 759 P.2d 1177, 1179 (Utah Ct.App.1988) ("A constructive trust is an equitable remedy to prevent unjust enrichment in the absence of any express or implied intention to form a trust."); *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987) ("A constructive trust is an equitable remedy which arises by operation of law to prevent unjust enrichment.").

## IV. THE DISTRICT COURT CORRECTLY DENIED DEFENDANTS' MOTION TO AMEND THEIR ANSWER AND COUNTERCLAIM

¶ 48 The district court did not err in denying Tooele City's and the Redevelopment Agency's motion to amend their answer and counterclaim to include a claim of offset. Defendants' proposed amendment would require that Grantsville share in past and future expenses associated with the Property if Grantsville should prevail on its "share the proceeds" claim. The district court denied Tooele City and the Redevelopment Agency's motion to amend on grounds that it was untimely. Specifically, the district court found that defendants' motion to amend was submitted "over five years since the instigation of the suit and over two years since the Defendants were allowed to amend their original answer." Additionally, the district court noted that defendants had "already been given an opportunity to amend their answer in March 2004" and that defendants' original answer included the claim of offset as an affirmative defense. Therefore, the district court concluded that defendants' motion was not based on any newly discovered evidence or issues.

¶ 49 Tooele City and the Redevelopment Agency argue that the district court abused its discretion in denying their motion to amend. They claim that their motion was timely filed because it was submitted on April 24, 2006, which was before the deadline set by the district court's scheduling order. Additionally, they contend that Grantsville would not be prejudiced if the court granted their motion to amend because their claim of offset was already alleged in the litigation as an affirmative defense.

¶ 50 "Leave to amend a pleading is a matter within the broad discretion of the trial court and we do not disturb its ruling unless appellant establishes an abuse of discretion resulting in prejudice." *HCA Health Servs., Inc. v. St. Mark's Charities*, 846 P.2d 476, 480 (Utah Ct.App.1993) (internal quotation marks omitted). A district court does not abuse its discretion by denying a motion to amend if "the amendment does not effect any substantial change in the issues as they were originally formulated in the pleadings." *Id.* (internal quotation marks omitted). In *St. Mark's*, we held that the district court did not abuse its discretion by denying the hospital's motion to amend its pleadings because the amended pleading "failed to effect any change in the issues before the court as to defeat the pending motion for summary judgment." *Id.*

¶ 51 Here, as was the case in *St. Mark's*, the district court's denial of Tooele City's and the Redevelopment Agency's motion to amend is not an abuse of discretion because defendants' amended pleadings would not have effected a change in the issues before

the court. Because the defendants' original answer already included an affirmative defense for offset, defendants' motion to amend did not substantially change the issues before the court but merely changed defendants' affirmative defense to an affirmative claim. Because the defendants' motion did not effect any substantial change in the issues on appeal and was filed five years after the litigation was instigated, we conclude the trial court did not abuse its discretion in denying Tooele City's and the Redevelopment Agency's motion to dismiss.

## V. THE DISTRICT COURT DID NOT ERR IN DENYING GRANTSVILLE'S MOTION FOR A CHANGE OF VENUE

¶ 52 Grantsville argues that the district court abused its discretion in denying Grantsville's motion for change of venue, which alleged that an impartial jury could not be impaneled in Tooele County. Specifically, Grantsville contends that every citizen of Tooele County has a financial interest in the litigation and has potentially been exposed to the local media's one-sided reporting of the issues in Tooele City's favor. Additionally, Grantsville argues that because "Tooele City residents make up more than one-half of the total residents of Tooele County" and because this case involves the possible redistribution of millions of dollars from Tooele City coffers to other local communities, it is unlikely that an impartial jury could be impaneled.

¶ 53 Utah Code section 78B–3–309(2) (2008) provides that a court may change the place of a trial "when there is reason to believe that an impartial trial cannot be had in the county, city, or precinct designated in the complaint."[10] "[T]he ques-tion of change of venue rests largely in [the trial judge's] judgment and his ruling thereon will not be upset unless it clearly appears that he abused his discretion." *Estate of Thorley v. Thorley*, 579 P.2d 927, 930 (Utah 1978). A trial court does not abuse its discretion in denying a change of venue when the allegations of bias are based on "general apprehensions based upon conjecture." *Id.* Trial procedures, such as voir dire, may provide litigants the opportunity to weed out potentially biased jurors. *Id.*

¶ 54 At this point, Grantsville's argument that an impartial jury cannot be impaneled is mere conjecture.[11] The jury in this case will consist of residents from Tooele City, as well as residents of the surrounding community. Additionally, voir dire provides the litigants with the opportunity to weed out potentially biased jurors. We therefore hold the trial court did not abuse its discretion in denying Grantsville's motion for change of venue. However, on remand, if Grantsville is able to produce evidence that an impartial jury cannot be impaneled, the district court may consider any subsequent motion filed by Grantsville for a change of venue.

## CONCLUSION

¶ 55 Because Grantsville signed the Interlocal Agreement as a member of an interlocal entity, and not in its own individual capacity, we conclude that Grantsville lacks traditional standing to assert contract claims under the Agreement. But we find that Grantsville has alternative standing because it is an appropriate party and it raises matters of public importance.

¶ 56 As to Grantsville's contractual claims, we hold that the district court erred in its finding that the Interlocal Agreement was integrated and unambiguous. We also hold

10. A 2008 amendment renumbered this section, which formerly appeared as section 78–13–9. Because the amendment made no substantive changes to the statute, we refer to the current version of the statute.

11. Grantsville relies on the case of *Durham v. Duchesne County*, 893 P.2d 581 (Utah 1995), to support its contention that the district court abused its discretion in denying Grantsville's motion for change of venue. However, this case is not applicable here. This case involved a negli-gence suit brought against a county, where a favorable outcome for the plaintiff would have a potentially negative financial impact on each and every juror. *Id.* at 583. Additionally, the county courthouse was the "site of the accident ... [and] the jurors might improperly inspect the accident scene and form conclusions not based on the evidence produced at trial." *Id.* at 582, 584. These circumstances are not present in the instant case.

that the district court erred in limiting Grantsville's contractual claim to the issue of whether defendants breached the Agreement by failing to share the proceeds. We therefore remand these issues for further proceedings.

¶ 57 As to the other claims and cross-claims on appeal, we hold that the district court properly granted summary judgment on the claims for breach of fiduciary duty, unjust enrichment, constructive trust, and accounting but remand the issue of reformation. We also hold that the district court did not err in dismissing Tooele City's and the Redevelopment Agency's motion to amend nor did it err in denying Grantsville's motion for a change in venue. We affirm in part and reverse in part the orders of the district court and remand for proceedings consistent with this opinion.

¶ 58 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH'S opinion.