2007 UT App 226

Raymond L. BALENTINE, Petitioner and Appellant,

v.

Corina L. GEHRING, Respondent and Appellee.

Gregg Gehring, Intervenor.

No. 20060714–CA.

Court of Appeals of Utah.

June 28, 2007.

Brett D. Cragun, Salt Lake City, for Appellant.

Kellie F. Williams, Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and DAVIS, J.

## OPINION

DAVIS, Judge:

¶1 Appellant Raymond L. Balentine appeals the decision of the trial court determining that he did not have standing to bring an action for paternity and child custody, and granting summary judgment in favor of Appellee Corina L. Gehring. We reverse and remand for further proceedings.

## BACKGROUND

¶2 Gehring and her husband were married in April 1999. Almost three years later, in early 2002, the couple separated. During this period of separation, Gehring met Balen-

tine while she was participating in a drug rehabilitation program. The two engaged in sexual relations and Gehring became pregnant. During her pregnancy, Gehring reconciled with her husband and moved back in with him. A daughter was born in December 2002, and her birth certificate listed Gehring's husband as the father.

¶ 3 Nearly a year later, in October 2003, Gehring and her husband met with Balentine to discuss the situation. The parties agreed that genetic testing would be done to determine whether Balentine was the biological father of the child. The testing confirmed that Balentine could not be ruled out as the father. Several months later, Gehring began to let the child spend alternate weekends with Balentine and Balentine began paying child support to Gehring.

¶ 4 During January 2005, as a result of marriage difficulties with her husband, Gehring signed a notarized statement giving "temporary custody" of the child to Balentine as the "biological father." But in April 2005, after Gehring and her husband again reconciled, she signed another statement to terminate the "temporary custody" given to Balentine as the child's "biological father." Balentine refused to return the child to Gehring's care and soon filed his Petition to Establish Paternity and Child Custody. That same week, Gehring filed a Verified Petition for Declaration of Paternity, Child Custody, Child Support, and Visitation. Gehring's case was subsequently consolidated into Balentine's case.

¶ 5 The trial court first issued a Temporary Restraining Order, directing Balentine to return the child to Gehring because Balentine's paternity had not been established and, therefore, Gehring and her husband were the legal parents of the child. Thereafter, the trial court granted Gehring's motion for summary judgment based on standing, reasoning that Balentine had no standing to challenge the presumption of paternity under either Utah statutory or case law. Balentine now appeals.

## ISSUE AND STANDARDS OF REVIEW

■ ¶ 6 Because the trial court's standing decision was the result of a summary judg-

ment motion, it necessarily must rest on undisputed facts. *See* Utah R. Civ. P. 56(c). As to our review, the trial court is given minimal discretion in determining whether the facts fit the legal requirements for standing. *See Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58, ¶ 18, 82 P.3d 1125. But first,

> [b]efore we consider whether the factual evidence was sufficient to establish standing, we consider whether the trial court correctly interpreted and applied the rules governing standing developed in our [statutory and] case law. This is a question of law that we review for correctness without affording any deference to the conclusions of the trial court.

*Id.*

## ANALYSIS

### I. Applicability of the Utah Uniform Parentage Act

■ ¶ 7 Balentine argues that the trial court erred when it determined that under the Utah Uniform Parentage Act, *see* Utah Code Ann. §§ 78–45g–101 to –902 (Supp. 2006), the mother or presumed father are the only persons who can challenge paternity. The court based its decision on the language in section 78–45g–607, which states: "Paternity of a child conceived or born during a marriage with a presumed father ... may be raised by the presumed father or the mother at any time prior to filing an action for divorce or in the pleadings at the time of the divorce of the parents." *Id.* § 78–45g–607(1).

¶ 8 This section, however, along with the other provisions of the Utah Uniform Parentage Act, did not become effective until May 2, 2005. *See* Uniform Parentage Act, ch. 150, 2005 Utah Laws 1014. Therefore, because Balentine's petition was filed on April 25, 2005—a week before the act's effective date—this act is not applicable to the instant case. Instead, we apply the Uniform Act on Paternity, *see* Utah Code Ann. §§ 78–45a–1 to –17 (2002) (repealed 2005), which was controlling when this proceeding was commenced, to determine whether Balentine has standing to bring a paternity action. *See id.* § 78–45g–902 ("A proceeding to adjudicate

parentage which was commenced before May 1, 2005 is governed by the law in effect at the time the proceeding was commenced."); *see also Gedo v. Rose*, 2007 UT App 154, ¶ 7 n. 3, 163 P.3d 659 (recognizing that provisions of the Utah Uniform Parentage Act were not applicable to an action filed on April 20, 2005).

¶ 9 Both the repealed Uniform Act on Paternity and the new Utah Uniform Parentage Act provide that the putative father may petition for a paternity determination. *Compare* Utah Code Ann. § 78–45a–2(1)(a) (2002) (repealed 2005), *with id.* § 78–45g–602(3) (Supp.2006). The former act does not contain a section, as the latter act does, that may arguably impose limitations on paternity challenges in the event that the child has a presumed father.[1] Thus, the trial court erred in relying on this newly codified limitation to determine that Balentine does not have standing to bring this paternity action.

## II. *Schoolcraft* Analysis

¶ 10 The trial court also determined that Balentine did not have standing to challenge paternity under the *Schoolcraft* analysis, which states that "[i]n determining who can challenge the presumption of legitimacy, a paramount consideration should be preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity." *In re J.W.F.*, 799 P.2d 710, 713 (Utah 1990). Balentine argues that the court summarily arrived at its determination based only upon the allegedly undisputed fact "that [Gehring] and [her husband] have an intact marriage and family."

¶ 11 Gehring argues that several undisputed facts support summary judgment and lists those facts as (1) Gehring and her husband were married when the child was born, (2)

Gehring's husband is listed as the father on the birth certificate, (3) Balentine did not have contact with the child for the first year of her life, (4) Balentine has not had contact with the child since the temporary restraining order was entered, and (5) Balentine has not legally established that he is the father. These facts, while sufficient to establish a presumption of paternity in favor of Gehring's husband, *see* Utah Code Ann. § 30–1–17.2(2) (Supp.2006), do not establish the effects that an attack on this presumed paternity would have on the child or on the stability of Gehring's marriage, which effects are key in the *Schoolcraft* analysis, *see In re J.W.F.*, 799 P.2d at 713.

¶ 12 While the trial court is certainly correct that the preservation of the marriage is a paramount consideration, *see id.*, the *Schoolcraft* analysis does not end with a determination that the mother is married. Instead, the trial court must base a decision of no standing on findings of fact that show that the challenge to paternity would negatively affect the stability of that marriage or expose the child to an unnecessary and disruptive attack upon her paternity. *See id.* Such findings, however, are not appropriate on summary judgment when the parties dispute the state of the marriage and the ultimate effect that the challenge would have on the marriage and on the child. A particular fact that must be addressed is that Gehring, and to some extent her husband, voluntarily treated Balentine as the biological father in many respects during more than a year of the marriage. For example, Gehring stated that Balentine was the biological father; accepted child support payments from him; allowed him visitations of varying durations; gave him full "custody" at a time of marital difficulty; and initially filed a petition to establish his paternity, custody, and child support obligations.[2]

---

1. Because the Utah Uniform Parentage Act is inapplicable in this case, we need not—and do not—decide whether Utah Code section 78–45g–607(1), *see* Utah Code Ann. § 78–45g–607(1) (Supp.2006), serves to limit standing to only the mother and presumed father in the case where the child has a presumed father.

2. Balentine argues that based on these actions, Gehring should be estopped from challenging his

paternity motion because she and her husband previously chose to include Balentine in the child's life. Although an estoppel argument is not appropriate prior to a standing determination, these actions should be considered in the *Schoolcraft* analysis because they have bearing on the state of the marriage, the effect that Balentine's status as a biological parent would have on the marriage, and the extent and nature of the

¶ 13 Because summary judgment is inappropriate when there are disputed issues of material fact, *see* Utah R. Civ. P. 56(c), the trial court improperly granted summary judgment on whether Balentine had established *Schoolcraft* standing. We therefore must reverse the trial court's grant of summary judgment and remand for further proceedings regarding Balentine's *Schoolcraft* standing. *Cf. Gedo v. Rose*, 2007 UT App 154, ¶ 11, 163 P.3d 659 ("Without district court findings or an undisputed factual record, an appellate court is not in a position to make the factual determinations that will necessarily establish or disestablish *Schoolcraft* standing.").[3]

## CONCLUSION

¶ 14 The Utah Uniform Parentage Act does not apply to the current case because this action was filed prior to the effective date of the act. The trial court therefore erred by applying provisions from this new act to the instant case. The trial court also erred in determining on summary judgment that Balentine did not have *Schoolcraft* standing because there were disputed issues of material fact that impact that determination. We therefore reverse the grant of summary judgment and remand to the trial court for further proceedings consistent with this opinion.

¶ 15 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and PAMELA T. GREENWOOD, Associate Presiding Judge.

relationship Balentine has developed with the child.

3. Balentine also argues that even if he does not have standing to challenge paternity, he should have been granted standing to pursue his custody action. He correctly points out that "[c]ertain people, because of their relationship to a child, are at least entitled to standing to seek a determination as to whether it would be in the best interests of the child for them to have custody."

*In re J.W.F.*, 799 P.2d 710, 714 (Utah 1990). However, the examples given in our case law where other non-parental individuals were permitted standing to pursue custody are limited to cases involving a stepparent, grandparent, or other close relative. *See id.* at 715. Without a legal determination that Balentine is the child's father, he stands in no familial relationship to the child and cannot be allowed to petition for custody on such grounds.