v.

**K.S.W., Respondent and Appellee.**

**D.R.W., Third-party Respondent and Appellee.**

**No. 20120559–CA.**

Court of Appeals of Utah.

Feb. 21, 2014.

Terry R. Spencer, for Appellant.

Diana J. Huntsman and Jason H. Fuller, for Appellees.

Judge CAROLYN B. McHUGH authored this Opinion, in which Judge J. FREDERIC VOROS JR. and Senior Judge JUDITH M. BILLINGS concurred.[1]

McHUGH, Judge:

¶ 1 R.P., an alleged biological father, appeals from the district court's dismissal of his petition to establish paternity under the Utah Uniform Parentage Act (the UUPA). *See* Utah Code Ann. §§ 78B–15–101 to –902 (LexisNexis 2012).[2] We affirm.

## BACKGROUND

¶ 2 While married to D.R.W. (Husband), K.S.W. (Wife) had an affair with R.P. and became pregnant. Wife informed R.P. of the pregnancy as well as her intention to stay married to Husband. In April 2010, prior to the child's birth, R.P. served Wife with a petition to establish paternity. Wife responded with an answer and counterpetition, admitting that R.P. was the biological father and requesting a decree of paternity and an order regarding child support, parent time, and joint legal custody. Husband was not joined as a party to the proceedings at that time.

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. Unless otherwise specifically noted, all citations to the Utah Code are to the 2012 edition of the Utah Code Annotated.

¶ 3 Wife and R.P. entered a mediated settlement agreement and filed a stipulation with the district court on January 27, 2011 (the Agreement). The parties dispute the extent to which Husband, Wife, and R.P. are bound by the Agreement and abided by its terms. Around the time of the child's first birthday, R.P. requested increased parent time pursuant to statute and as outlined in the Agreement. Shortly thereafter, Wife filed a motion to set aside the Agreement and a motion to dismiss the petition for paternity for lack of standing or failure to name an indispensable party, or, in the alternative, for summary judgment based on declarations from Husband and Wife. The domestic relations commissioner recommended denial of Wife's motion to set aside the Agreement and motion to dismiss and ordered that Husband be joined as a party. Husband joined the proceedings as a third-party respondent, and together with Wife filed an objection to the commissioner's recommendation and a request for a de novo evidentiary hearing. Wife then filed a voluntary withdrawal of her counterpetition. The district court held a hearing on the objections, overturned the commissioner's recommendation, accepted Wife's voluntary dismissal of her counterpetition, and granted the motion to dismiss based on its conclusion that R.P. lacked standing to challenge the child's paternity. R.P. unsuccessfully sought relief from these decisions under rules 60(b) and 59(a) of the Utah Rules of Civil Procedure. R.P. filed a timely appeal of the order

of dismissal and the order denying the rule 60(b) and 59(a) motions. On appeal, all parties treat the district court's ruling as a ruling on a motion for summary judgment.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 4 R.P. raises multiple issues on appeal, but the question of whether R.P. had standing to challenge the paternity of Husband, the presumed father under the UUPA, see Utah Code Ann. § 78B–15–204(1)(a), is determinative. The issue of whether a party has standing is primarily a question of law, which we review for correctness. *Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 18, 82 P.3d 1125; *Pearson v. Pearson (Pearson I)*, 2006 UT App 128, ¶ 12, 134 P.3d 173, *aff'd*, 2008 UT 24, 182 P.3d 353.[3]

## ANALYSIS

¶ 5 R.P. contends that the district court erred by ruling that under the statute, he lacks standing to challenge the presumption of paternity enjoyed by the husband of a married woman.[4] Husband and Wife assert that the district court correctly ruled that R.P. lacks standing under the UUPA. Although both parties agree that the UUPA addresses the issue of standing, R.P. assumes that the UUPA should be supplemented by the common law, which he contends affords him standing. Husband and Wife

---

**3.** Because we decide that the UUPA does not confer standing on R.P. to raise the paternity of the child under the facts of this case, we need not consider whether the district court adequately addressed the substantive issues of waiver and estoppel. *See Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 7, 207 P.3d 1221 ("Because lack of standing is jurisdictional, parties may raise it as an issue at any time in the proceedings...."); *Balentine v. Gehring*, 2007 UT App 226, ¶ 12 n. 2, 164 P.3d 1269 ("[A]n estoppel argument is not appropriate prior to a standing determination...."). Likewise, given our conclusion that the UUPA preempts the common law, we need not determine whether summary judgment was appropriate under *In re J.W.F. (Schoolcraft)*, 799 P.2d 710 (Utah 1990).

**4.** R.P. argues only that he has standing in the sense of permission to bring a paternity action. *See* Utah Code Ann. § 78B–15–602 (governing

standing to maintain a proceeding to adjudicate parentage). Accordingly, throughout this decision, we use the term "standing" to refer to the permission to bring a paternity action rather than the traditional sense of the term, which focuses on whether the claimant "has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983); *see also City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 14, 233 P.3d 461; *In re E.H.*, 2006 UT 36, ¶ 49, 137 P.3d 809 ("A plaintiff who has not been granted standing to sue by statute must either show that he has or would suffer a distinct and palpable injury that gives rise to a personal stake in the outcome of the case or meet one of the two exceptions to standing recognized in cases involving important public issues." (citations and internal quotation marks omitted)).

take a contrary view of the conclusions to be drawn under a common law approach.

¶ 6 We begin our analysis with an examination of Utah law regarding the presumption of paternity for children born into a marriage. First, we address the common law treatment of this issue, and second, we consider the statutory framework adopted by the Utah Legislature. Next, we determine the extent to which the Utah Legislature has preempted the common law through its adoption of the UUPA. We then turn to the effect of Wife's counterpetition.

¶ 7 Ultimately, we conclude that the UUPA has preempted the common law on the issue of who has standing to challenge a presumed father's paternity. We also conclude that the UUPA limits standing here to Husband and Wife. Thus, the district court properly dismissed R.P.'s petition. Although constitutional considerations might require further analysis in cases such as this—where the alleged father has an established relationship with the child—R.P. has not raised a constitutional challenge in the district court or on appeal. Accordingly, we leave for another day the issue of the constitutional implications of the UUPA's standing limitations where the alleged father has an established relationship with the child. We also conclude that because R.P. did not challenge the district court's acceptance of Wife's voluntary dismissal of her counterpetition, he has waived his right to proceed under it.

## I. Standing to Challenge Paternity Under Utah's Common Law

¶ 8 Utah courts have traditionally addressed the issue of a party's standing to challenge a presumed father's paternity under a common law test first announced in *In re J.W.F. (Schoolcraft)*, 799 P.2d 710 (Utah 1990). There, a wife became pregnant with another man's child. *See id.* at 712. After the child was born, the wife and the biological father abandoned the child and the juvenile court granted custody of the child to the Division of Family Services. *Id.* The husband, who at that point was living apart from the wife, learned about the pregnancy when the child was approximately nine months old. *Id.* The husband filed a petition for custody of the child, alleging that he was the presumed father because he was married to the wife and living with her at the time the child was conceived. *Id.* The guardian ad litem (GAL) responded with a petition seeking a determination that the husband had no legal right to parent the child. *Id.* After a hearing on the matter, the juvenile court found that the husband was not the biological father of the child and concluded that he lacked standing to assert that it was in the child's best interest to grant him custody. *Id.* After this court affirmed the juvenile court's decision, the Utah Supreme Court granted the husband's petition for certiorari review. *Id.*

¶ 9 The supreme court first considered whether the GAL was properly permitted to challenge the presumption that a child born during a marriage is the husband's natural child. *Id.* The court ruled that, "as a general matter, the class of persons permitted to challenge the presumption of paternity should be limited," but when determining who should be included in that class, "a paramount consideration should be preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity." *Id.* at 713. Thus, the supreme court instructed that standing to challenge paternity should not be determined solely on legal status, but on a case-by-case analysis of whether the considerations of marital stability and protection of the child would be undermined by permitting the challenge. *Id.* Because the stability of the marriage in *Schoolcraft* "was shaken long ago" and the husband and wife's marriage was "one in name only," the supreme court determined that the first consideration in allowing challenges to the presumption of paternity—preserving the stability of the marriage—was not at issue. *Id.* The supreme court reached a similar conclusion with respect to the interest of protecting the child from attacks on his legitimacy, explaining that the child's "expectations as to who his father is cannot be shaken by permitting a challenge to the presumption of legitimacy," because "[t]he child has never had a relationship" with the husband, the biological father, or even the wife. *Id.* As a result, the

court held that the GAL had standing to challenge the husband's paternity. *Id.*

¶ 10 In 1990, when the Utah Supreme Court decided *Schoolcraft*, the controlling legislation in this area was the Uniform Act on Paternity. *See* Utah Code Ann. §§ 78–45a–1 to –7 (Michie 1990). The Uniform Act on Paternity stated that paternity could "be determined upon the petition of the mother, child, putative father, or the public authority chargeable by law with the support of the child." *Id.* § 78–45a–2 (Michie 1990).[5] The *Schoolcraft* court did not address the statute, which expressly authorized the child to petition for a paternity determination. *See id.* Although the *Schoolcraft* court ultimately allowed the child, through the GAL, to challenge the husband's paternity, the court's analysis suggests that the *Schoolcraft* test was to be a common law refinement of statutory standing. *See Schoolcraft*, 799 P.2d at 713; *see also, e.g., Pearson v. Pearson (Pearson II)*, 2008 UT 24, ¶ 32, 182 P.3d 353 (denying standing under *Schoolcraft* to an alleged father); *Balentine v. Gehring*, 2007 UT App 226, ¶¶ 9, 13, 164 P.3d 1269 (concluding that the Uniform Act on Paternity "provide[d] that the [alleged] father may petition for a paternity determination" but remanding for consideration of the *Schoolcraft* factors).

¶ 11 Based on *Schoolcraft*, R.P. argues that he should be permitted to challenge the presumption that Husband is the biological father of the child born to Wife. In particular, he asserts that the district court erred in granting summary judgment on the issue of standing because genuine issues of material fact were in dispute with respect to the *Schoolcraft* test. However, in 2005, the Utah Legislature replaced the Uniform Act on Paternity with the UUPA. *See* Uniform Parentage Act, ch. 150, 2005 Utah Laws 1014, 1014–15. R.P.'s argument assumes that the common law *Schoolcraft* analysis remains relevant under the UUPA, which was in effect at the time R.P. filed his petition in 2010. *See id.; cf.* Utah Code Ann. § 78B–15–902 ("A

proceeding to adjudicate parentage which was commenced before May 1, 2005 is governed by the law in effect at the time the proceeding was commenced."). Before we address that issue, we consider the standing provisions of the UUPA.

## II. Standing to Challenge Paternity Under the UUPA

¶ 12 Under the UUPA, a man is presumed to be the father of a child when, among other situations, "he and the mother of the child are married to each other and the child is born during the marriage." Utah Code Ann. § 78B–15–204(1)(a); *see also id.* § 78B–15–102(20) (" 'Presumed father' means a man who, by operation of law under Section 78B–15–204, is recognized as the father of a child until that status is rebutted or confirmed as set forth in this chapter."). Because Husband and Wife are married to each other and the child was born during their marriage, Husband is the child's presumed father under section 78B–15–204(1)(a). Once such a presumption of paternity arises, it "may only be rebutted in accordance with Section 78B–15–607." *Id.* § 78B–15–204(2). A man with an unrebutted presumption of paternity is the legal father of the child. *See id.* § 78B–15–102(18) (" 'Parent-child relationship' means the legal relationship between a child and a parent of the child. The term includes the mother-child relationship and the father-child relationship."); *id.* § 78B–15–201(2) ("The father-child relationship is established between a man and a child by ... an unrebutted presumption of the man's paternity of the child under Section 78B–15–204....").

¶ 13 The UUPA specifically identifies the parties who may maintain a proceeding to adjudicate the parentage of a child. Section 602 of the UUPA, entitled "Standing to maintain proceeding," sets forth the general standing provisions under the UUPA:

---

**5.** Although the term is not defined, the Uniform Act on Paternity used "putative father" to describe a man claiming to be a child's biological father. The UUPA instead uses the term "alleged father" to describe "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." Utah Code Ann. § 78B–15–102(2). Throughout this opinion, we use the term "alleged father" to describe R.P. and other persons falling within the UUPA definition.

*Subject to* Part 3, Voluntary Declaration of Paternity, and Sections *78B–15–607* and 78B–15–609, a proceeding to adjudicate parentage may be maintained by:

(1) the child;

(2) the mother of the child;

(3) a man whose paternity of the child is to be adjudicated;

(4) the support-enforcement agency or other governmental agency authorized by other law;

(5) an authorized adoption agency or licensed child-placing agency;

(6) a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor; or

(7) an intended parent under Part 8, Gestational Agreement.

*Id.* § 78B–15–602 (emphasis added). Although this general provision confers standing on "a man whose paternity of the child is to be adjudicated," which could arguably include R.P., that general standing provision is expressly limited by section 607, entitled "Limitation–Child having presumed father." [6]

¶ 14 Section 607 states in relevant part,

Paternity of a child conceived or born during a marriage with a presumed father as described in Subsection 78B–15–204(1)(a), (b), or (c), *may be raised by the presumed father or the mother* at any time prior to filing an action for divorce or in the pleadings at the time of the divorce of the parents.

*Id.* § 78B–15–607(1) (emphasis added). As discussed, Husband is the presumed father of the child under section 204, *see id.* § 78B–15–204(1)(a), and that presumption "may only be rebutted in accordance with Section 78B–15–607," *id.* § 78B–15–204(2). Thus, the

UUPA plainly states that standing to challenge the presumption that Husband is the child's father is governed by section 607, not the general standing provision in section 602.

A. Section 607 Is Ambiguous.

¶ 15 While there is no dispute that neither Husband nor Wife has filed a divorce petition, they and R.P. disagree about the proper interpretation of section 607. "When interpreting a statute, our goal is to give effect to the legislature's intent and purpose." *Francis v. State*, 2013 UT 65, ¶ 41, 321 P.3d 1089 (citation and internal quotation marks omitted). To determine that intent, we look to the plain language of the statute, reading it as a whole and interpreting its provisions to ensure harmony with other provisions in the same chapter and related chapters. *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135. Furthermore, "[w]hen the plain meaning of the statute can be discerned from its language, no other interpretative tools are needed." *Id.* "But when statutory language is ambiguous—in that its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis—we generally resort to other modes of statutory construction and seek guidance from legislative history and other accepted sources." *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (citation and internal quotation marks omitted).

¶ 16 While section 602 of the UUPA lists seven classes of persons who may adjudicate parentage under the UUPA, that section is expressly subject to section 607. *See* Utah Code Ann. § 78B–15–602. Section 607 provides, as its title suggests, limits on actions to address paternity in cases involving a presumed father. *See id.* § 78B–15–607. The parties raise two conflicting interpretations of that limitation based on section 607's pro-

---

**6.** The general standing provision is also subject to section 78B–15–609, which states,

If a child has a declarant father, a signatory to the declaration of paternity or denial of paternity or a support-enforcement agency may commence a proceeding seeking to rescind the declaration or denial or challenge the paternity of the child only within the time allowed under Section 78B–15–306 or 78B–15–307.

Utah Code Ann. § 78B–15–609(1). The UUPA defines a "declarant father" as "a male who, along with the biological mother claims to be the genetic father of a child, and signs a voluntary declaration of paternity to establish the man's paternity." *Id.* § 78B–15–102(8). Because R.P. did not file a voluntary declaration of paternity, he is not a declarant father under the UUPA. *See id.* §§ 78B–15–301 to –313 (Voluntary Declaration of Paternity Act).

vision that "[p]aternity of a child conceived or born during a marriage with a presumed father ... may be raised by the presumed father or the mother at any time prior to filing an action for divorce or in the pleadings at the time of the divorce." *See id.* § 78B–15–607(1). R.P. advances a construction of the provision that limits the time during which the presumed father and the mother can raise a challenge to the paternity of a child born during their marriage. Under this interpretation, all of the persons listed in section 602 have standing to challenge that child's paternity at any time, except the presumed father and the mother, who may do so only prior to filing an action for divorce or in the divorce pleadings. R.P. contends that if the legislature had intended to limit standing to the presumed father and the mother, it would have inserted the word "only" into the provision. In contrast, Husband and Wife argue that section 607 limits the right to raise the child's paternity to the two persons listed: the presumed father and the mother.

¶ 17 The remaining provisions of section 607 do not clarify which interpretation of the limitation on standing the Utah Legislature intended. Subsection 607(4) states, "There is no presumption to rebut if the presumed father was properly served and there has been a final adjudication of the issue." *Id.* § 78B–15–607(4). In turn, the UUPA defines "adjudicated father" as "a man who has been adjudicated by a tribunal to be the father of a child," *id.* § 78B–15–102(1), and provides that the juvenile court and the Office of Recovery Services (ORS) are authorized to adjudicate parentage under part 6 of the UUPA, *id.* § 78B–15–104(1). When read together, these sections suggest that despite section 607's limitation, parentage may be adjudicated in a juvenile court or ORS proceeding prior to the time that a divorce action is filed. But nothing in these sections of the UUPA indicates who may initiate such a proceeding where the child has a presumed father. On the other hand,

the interpretation advanced by Husband and Wife finds some support in the fact that subsections 607(1)(b) and 607(1)(c) provide guidance on rebuttal of the presumption of paternity in only two instances—a challenge to paternity by the presumed father or a challenge by the mother. *See id.* § 78B–15–607(1)(b) (presumed father); *id.* § 78B–15–607(1)(c) (mother). Accordingly, we are unable to resolve the ambiguity raised by the parties based on the plain language of the UUPA.

B. Limiting Standing to the Presumed Father and the Mother During the Marriage Is Consistent with the Legislative Purpose of the UUPA.

¶ 18 Because section 607 is susceptible to two reasonable interpretations, we resort to other modes of statutory construction. *See Marion Energy*, 2011 UT 50, ¶ 15, 267 P.3d 863. In particular, we may consider the legislative history and policy objectives of the statute. *See Wilcox v. CSX Corp.*, 2003 UT 21, ¶ 12, 70 P.3d 85 (stating that it is "proper to look to legislative history and policy considerations for guidance" in resolving statutory ambiguity). R.P. calls our attention to a draft version of section 607 that included the word "only," and argues that the Utah Legislature's deletion of that word in the final version of the statute indicates its intent that standing not be limited to the presumed father and the mother under section 607.[7] The utility of this information is tempered, however, by Husband's and Wife's reliance on the Utah Legislature's deviation from the uniform act's treatment of standing when a child has a presumed father. Section 607 of the uniform act provides, "[A] proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father must be commenced not later than two years after the birth of the child." Uniform Parentage Act § 607 (2002), *available at* http://www.uniformlaws.org/shared/docs/parentage/

---

7. A prior draft of the bill stated, "Paternity of a child conceived or born during a marriage with a presumed father ... may *only* be raised by the presumed father or the mother at any time prior to filing an action for divorce or in the pleadings at the time of the divorce of the parents." *See*

S.B. 14, 55th Leg., 2005 Gen. Sess. § 65, at 34 (Utah 2005) (as introduced Jan. 17, 2005) (emphasis added). The House Judiciary Committee amended the bill, removing the word "only," among other changes. S.B. 14, House Judiciary Committee Report, February 14, 2005, at 1–2.

upa_final_2002.pdf. But a challenge may be brought at any time if the court determines that "(1) the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; and (2) the presumed father never openly held out the child as his own." *Id.* The comments to the uniform act state that this provision provides "a middle ground" between the approaches taken by states that "imposed an absolute bar" on an alleged father's right to challenge a presumed father's paternity and those that granted broader rights to an alleged father. *Id.* § 607 comment.

¶ 19 The uniform act is thus worded as a limitation on "proceeding[s] brought by" a class of individuals; it presumably does not apply to a support-enforcement agency, authorized adoption agency, or licensed child-placing agency. *Compare id.* § 602, *with id.* § 607. In contrast, the Utah Legislature adopted language in section 607 that refers to permission to raise paternity: "Paternity ... may be raised by...." *See* Utah Code Ann. § 78B–15–607(1). The Utah Legislature further deviated from the uniform act by removing any reference to "another individual" and providing that "the presumed father or the mother" may raise the child's paternity "at any time prior to filing an action for divorce or in the pleadings at the time of the divorce." *See id.* We consider the Utah Legislature's departure from the language of the uniform act instructive of its intent to prevent a challenge to paternity during the marriage from an outsider to the marriage.[8]

¶ 20 Our reasoning on this point is illustrated by an examination of other sections of the UUPA addressing issues related to the timing of filing a paternity action and persons who can file a paternity action. Section 606 states, in part, "A proceeding to adjudicate the parentage of a child having no declarant or adjudicated father may be commenced at any time." *Id.* § 78B–15–606.[9] This provision makes no attempt to identify a subset of the persons with standing under section 602 and expressly indicates that such an action can be brought "at any time." *Id.* That first sentence thus sets no limitation on the persons with standing or on the time in which a paternity action can be filed. This is consistent with the heading of section 606: "No limitation—Child having no declarant or adjudicated father." *Id.* But the next sentence of section 606 expressly limits standing in one circumstance, stating, "If initiated after the child becomes an adult, only the child may initiate the proceeding." *Id.* The "only" in the second sentence emphasizes the exception to the unlimited right to pursue such an action before the child reaches adulthood set forth in the immediately preceding sentence.

¶ 21 Unlike the first sentence of section 606, subsection 607(1), which is identified in the heading as a "limitation," states that the paternity of a child with a presumed father "may be raised by the presumed father or the mother at any time prior to filing an action for divorce." *Id.* § 78B–15–607(1). Section 606's lack of a subset of the persons with general standing suggests that all of those persons may file a proceeding to adjudicate parentage if the child has no declarant or adjudicated father and the action is filed before the child becomes an adult. In con-

---

**8.** Although one legislator's view is not controlling, we also note that the sponsor of the UUPA explained that the amendments to the bill, which included the deletion of the word "only" from section 607, were to clarify that the presumed father could challenge paternity after the entry of a divorce decree declaring him the father if he had been defrauded by the mother into believing the child was his biological child. Recording of Utah Senate Floor Debates, S.B. 14, 55th Leg., 2005 Gen. Sess. (Feb. 18, 2005) (statement by Sen. Lyle Hillyard). According to this explanation, the deletion of "only" was to eliminate any time limitation or bar created by an adjudication in the case of fraud, not to indicate that persons other than the presumed father or the mother

could raise paternity prior to the filing of a divorce action.

**9.** We note that a child with a presumed father would also be a child with no declarant or adjudicated father. However, we conclude that section 607 governs this case, given "the well-settled principle of statutory construction that when two provisions address the same subject matter and one provision is general while the other is specific, the specific provision controls." *Emergency Physicians Integrated Care v. Salt Lake County,* 2007 UT 72, ¶ 19, 167 P.3d 1080 (citation and internal quotation marks omitted).

trast, the inclusion in subsection 607(1) of just two of the persons who generally may raise paternity infers that they are the only persons who may do so when there is a presumed father and no divorce petition has been filed. This method of delineating who may raise an issue is found in other sections of the UUPA. For example, section 609 identifies a subset of the persons listed in section 602, while subsection 607(2) does not. *Compare id.* § 78B–15–609(1) (providing that "a signatory to the declaration of paternity or denial of paternity or a support-enforcement agency" may "commence a proceeding seeking to rescind the declaration or denial or challenge the paternity of the child only within the time allowed under Section 78B–15–306 or 78B–15–307"), *with id.* § 78B–15–607(2) ("For the presumption outside of marriage described in Subsection 78B–15–204(1)(d), the presumption may be rebutted at any time if the tribunal determines that the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception."). Reading these provisions in concert indicates that when the Utah Legislature identified a subset of the persons listed in section 602 it intended to limit the parties who could bring the action described. Under these circumstances, we are not convinced that the absence of the word "only" in subsection 607(1) indicates that the Utah Legislature intended that all of the persons listed in section 602 have standing to raise the paternity of a child with a presumed father at any time, except the mother and the presumed father, who may do so only until a divorce action has been initiated. Just as the Utah Legislature could have stated that "only" the presumed father and the mother could raise such an action, it could have also plainly stated that the presumed father and the mother could do so "only" prior to the filing of a divorce action.

¶ 22 We are more influenced by the Utah Legislature's rejection of the uniform act's framework, which allows "another individual" to challenge the paternity of a child with a presumed father during the first two years of the child's life. *Compare* Utah Code

Ann. § 78B–15–607(1), *with* Uniform Parentage Act § 607 (2002), *available at* http://www.uniformlaws.org/shared/docs/parentage/upa_final_2002.pdf. Although the Utah Legislature has indicated that the UUPA is a uniform act that should be construed with consideration for the need to promote uniformity of the law, *see* Utah Code Ann. § 78B–15–901, it considered the marital presumption of sufficient significance to warrant departure from those uniform provisions. The Utah Legislature's deviation from the provisions of a uniform act is deemed intentional. *Cf. State v. Casey,* 2003 UT 55, ¶ 29, 82 P.3d 1106 ("Because the Utah Legislature did not adopt the particular wording of the [model penal code] ..., we assume that it did so deliberately...."). Accordingly, we are convinced that the Utah Legislature intentionally limited the persons with standing under section 607 to the presumed father and the mother by wording section 607 as a grant of permission to bring a paternity action rather than as a limitation on proceedings brought by a class of persons, and by refusing to adopt the uniform act's inclusion of "another individual" in section 607, which would have arguably included R.P.

¶ 23 Furthermore, this interpretation is more consistent with the purposes of the UUPA. *See State v. Watkins,* 2013 UT 28, ¶ 23, 309 P.3d 209 ("[O]ur primary objective is to ascertain the intent of the [L]egislature." (second alteration in original) (citation and internal quotation marks omitted)); *Wilcox v. CSX Corp.,* 2003 UT 21, ¶ 12, 70 P.3d 85 (authorizing consideration of legislative history and legislative policy to resolve statutory ambiguity). One scholar, Theresa Glennon, notes that the Uniform Parentage Act incorporates the common law assumption that "parenthood within marriage best protects children." *Somebody's Child: Evaluating the Erosion of the Marital Presumption of Paternity,* 102 W. Va. L.Rev. 547, 590–91 (2000). Professor Glennon explains that the "unstated presumption about marriage is that the marital relationship could not survive the presence of the biological father." *Id.* at 591–92.[10] Similarly, Utah's common

10. Professor Glennon also challenges this as-

sumption in light of the rise in blended families.

law encouraged "the [presumed] father to stay married to the child's mother and to assume parental responsibility for the child." *Pearson II*, 2008 UT 24, ¶ 17, 182 P.3d 353. When the presumed father assumed responsibility for the child, "any challenge" to the presumed father's paternity was deemed "disruptive and unnecessary." *Id.* ¶¶ 11, 18. There is nothing in the UUPA that states the purpose of section 607, but the Utah Legislature has given no indication that its goals were any different than those incorporated into the uniform act or reflected in Utah's common law limitations on attacks to the marital presumption. Rather, the UUPA has taken a more aggressive approach through its version of section 607 to accomplish those goals.

¶ 24 Indeed, it is more difficult to imagine why the Utah Legislature would allow all other persons identified in section 602 to challenge the paternity of a child with a presumed father at any time but restrict a challenge by the presumed father and the mother to any time prior to the filing of a divorce action or in the pleadings at the time of divorce.[11] This would subject the marriage, the child, and the relationship between the child and the presumed father to attack by outsiders to the marriage at a time critical to the preservation of the marriage, thereby discouraging the presumed father from staying married to the mother and assuming parental responsibilities for the child. Furthermore, it would be directly contrary to the UUPA's indication that a presumed father who is adjudicated as the father of a child in a divorce action may later challenge that decree under the law governing vacation of judgments, including fraud. *See* Utah Code Ann. § 78B–15–623(6); Utah R. Civ. P.

60(b)(3) (providing that "[o]n motion and upon such terms as are just, the court may in the furtherance of justice relieve a party … from a final judgment … for (3) fraud …, misrepresentation or other misconduct of an adverse party"); *see also State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265 (instructing that statutes' provisions should be construed to ensure harmony with one another and to avoid interpretations of one section that destroy another).

¶ 25 In contrast, conferring standing to challenge the child's paternity only on the presumed father and the mother, so long as they are committed to remaining married, protects the marriage, the child, and the child's relationship with the presumed father from disruptive attacks by third parties. Interpreting section 607 in this way thus advances a goal of preserving the marriage not only for the sake of the child whose paternity could be challenged, but also for the sake of any other children of the marriage. Under this construction of section 607, the presumed father or the mother can, as a practical matter, determine whether to allow an alleged father to be adjudicated as the child's parent and to have a role in the child's life. But if both the presumed father and the mother decide that the involvement of an alleged father would be detrimental to the child or to the stability of the marriage, the statute prevents the alleged father from challenging that decision. *See* Utah Code Ann. § 78B–15–607(1).

¶ 26 Accordingly, we conclude that section 607 reflects the Utah Legislature's intent to encourage a presumed father to stay married to the mother and to raise the child in an intact marriage.[12] Unless the

---

*See* Theresa Glennon, *Somebody's Child: Evaluating the Erosion of the Marital Presumption of Paternity*, 102 W. Va. L.Rev. 547, 592, 603 (2000).

11. Although one purpose of such a limitation might be to protect the expectations of the child in knowing who his or her parents are, such a policy would be incongruent with restricting the presumed father and the mother from raising a post-divorce challenge to paternity while allowing all other persons listed in section 602 to do so.

12. Recognizing again the limited utility of one legislator's view, we also note that our conclusion is consistent with the comments of the sponsor of the UUPA:

> I can tell you that this bill is very family oriented and family friendly. We followed the precedent of a California case, where, if you have an intact marriage, for example, that the biological parent cannot interfere with that intact marriage. And the California case involved a husband and a wife; they separated; the wife lived with another man and became pregnant; and at that point of time, her husband accepted her back. So she moved back,

couple decides to seek a divorce, section 607 limits the persons with standing to raise the paternity of the child to the presumed father and the mother.[13] Consequently, the district court correctly ruled that the UUPA does not grant R.P. the right to challenge the child's paternity.[14]

### III. The UUPA's Preemption of the Common Law

 ¶ 27 Despite the adoption of the UUPA, R.P. argues that the *Schoolcraft* common law approach remains relevant and that he has standing under that analysis. In support of that position, he relies on our decision in *Balentine v. Gehring*, 2007 UT App 226, 164 P.3d 1269. *Balentine* involved facts similar to this case. The district court ruled on summary judgment that an alleged father lacked standing to challenge the presumed father's paternity. *Id.* ¶¶ 4–5. We reversed the grant of summary judgment because factual disputes relevant to the *Schoolcraft* analysis remained unresolved. *Id.* ¶ 13. We explained,

> A particular fact that must be addressed is that [the wife], and to some extent her

> they resumed their marriage relationship, and then the baby was born and the biological father wanted visitation. And the court—and this bill says the same thing—that parents together had to create the family. Now if they were getting divorced, there would be a different situation involved.

Recording of Utah Senate Floor Debates, S.B. 14, 55th Leg., 2005 Gen. Sess. (Jan. 25, 2005) (statement of Sen. Lyle Hillyard).

13. We express no opinion on the issue of who has standing once a petition for divorce has been filed.

14. We acknowledge that when interpreting statutes, we "construe the statute to avoid interpretations that conflict with relevant constitutional mandates, so long as the resulting construction does not conflict with the reasonable or actual legislative purposes of the statute." *In re Estate of S.T.T.*, 2006 UT 46, ¶ 26, 144 P.3d 1083 (citation and internal quotation marks omitted). However, R.P. has not argued that our interpretation of section 607 is unconstitutional in all instances, i.e., facially unconstitutional. *See Michael H. v. Gerald D.*, 491 U.S. 110, 121–30, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion) (holding that a statute denying alleged father the right to challenge the marital presumption did not violate alleged father's substantive or procedural due process rights); *see also*

husband, voluntarily treated [the alleged father] as the biological father in many respects during more than a year of the marriage. For example, [the wife] stated that [the alleged father] was the biological father; accepted child support payments from him; allowed him visitations of varying durations; gave him full "custody" at a time of marital difficulty; and initially filed a petition to establish his paternity, custody, and child support obligations.

*Id.* Noting the factual similarities between *Balentine* and this case, R.P. argues that the district court here improperly granted summary judgment on standing.

 ¶ 28 However, we conclude that the UUPA, which was not controlling in *Balentine*, preempts the common law *Schoolcraft* analysis.[15] "Statutes 'may preempt the common law either by governing an area in so pervasive a manner that it displaces the common law' (field preemption) 'or by directly conflicting with the common law' (conflict preemption)." *In re Estate of Hannifin*, 2013 UT 46, ¶ 10, 311 P.3d 1016 (quoting *OLP, LLC v. Burningham*, 2009 UT 75, ¶ 16,

*In re Baby Girl T.*, 2012 UT 78, ¶ 19, 298 P.3d 1251 (holding that so long as a statute provides an alleged father a meaningful chance to develop a relationship with his child, it satisfies due process). Likewise, R.P. has not argued that, based on his payment of child support and exercise of parent time pursuant to the Agreement with Wife and the alleged acquiescence of Husband, the statute is unconstitutional as applied to him. Accordingly, we do not consider whether section 607 is unconstitutional. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("In general, if a defendant has not raised an issue on appeal, [an appellate court] may not consider the issue sua sponte." (alteration in original) (citation and internal quotation marks omitted)); *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (stating that "the preservation rule applies to every claim, including constitutional questions").

15. In *Balentine*, we determined that the case was not governed by the UUPA because the alleged father had filed his petition before the effective date of the statute. *Balentine v. Gehring*, 2007 UT App 226, ¶ 8, 164 P.3d 1269; *see also id.* ¶ 9 n. 1 ("Because the Utah Uniform Parentage Act is inapplicable in this case, we need not—and do not—decide whether [section 607] serves to limit standing to only the mother and presumed father in the case where the child has a presumed father." (citation omitted)).

225 P.3d 177). " '[F]ield preemption occurs when the scope of a statute indicates that [the legislature] intended [a statute] to occupy a field' in such a way 'as to make reasonable the inference that [the legislature] left no room for the [common law] to supplement it.' " *Id.* ¶ 11 (second, third, fourth, and fifth alterations in original) (quoting *In re Adoption of A.B.*, 2010 UT 55, ¶ 31, 245 P.3d 711); *see also Daniels v. Gamma West Brachytherapy, LLC,* 2009 UT 66, ¶ 49, 221 P.3d 256 ("A statute preempts a common law claim ... by comprehensively addressing a particular area of law such that it displaces the common law."). In contrast, conflict preemption "occurs where it is impossible ... to comply with both [the common law] and [a statute], or where [the common law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the legislature]." *Hannifin,* 2013 UT 46, ¶ 11, 311 P.3d 1016 (alterations and omission in original) (citation and internal quotation marks omitted). Although the legislature may expressly indicate its intent to preempt the common law, more frequently " 'explicit pre-emption language does not appear' " and the " 'courts must consider whether the ... statute's structure and purpose or nonspecific statutory language nonetheless reveal a clear, but implicit, pre-emptive intent.' " *Id.* ¶ 10 (omission in original) (quoting *Bishop v. GenTec Inc.,* 2002 UT 36, ¶ 9, 48 P.3d 218).

¶ 29 In *Estate of Hannifin,* the district court appointed as the personal representative of a decedent's estate an individual whom the decedent had raised and treated as his son, but who was not related biologically or legally to the decedent. *See id.* ¶¶ 1, 4–7. A group of the decedent's collateral relatives, acting through a special administrator, challenged the alleged son's right to inherit. *Id.* ¶ 8. The district court ultimately ruled that the alleged son was entitled to inherit the estate under the common law doctrine of equitable adoption. *Id.* ¶ 1. The special administrator filed an appeal, claiming that "Utah's enactment of the Probate Code preempted the common law doctrine of equitable adoption." *Id.* ¶ 9.

¶ 30 The portion of the Probate Code at issue in *Hannifin* included provisions stating that "principles of ... equity supplement its provisions" unless they are "displaced by the particular provisions of th[e] code." *Id.* ¶ 12 (alteration and omission in original) (citation and internal quotation marks omitted). Applying a conflict preemption analysis, the majority of the Utah Supreme Court concluded that the common law doctrine of equitable adoption was in direct conflict with the Probate Code "in three principal respects."[16] *Id.* ¶ 15. First, the court noted that "[e]quitable adoption allows children who cannot satisfy the Probate Code's definition of 'Child' to nonetheless participate in intestate succession as if they had." *Id.* Second, the *Hannifin* court indicated that although the Probate Code dictated that an adopted child could inherit from only his adoptive parents, the common law doctrine of equitable adoption permitted the child to inherit from both the adoptive and natural parents. *Id.* Third, the majority reasoned that the common law doctrine added "confusion and complexity to our law's intestate succession scheme, in contravention of the Code's stated purpose of streamlining and clarifying the distribution of a decedent's estate." *Id.* As a result, the majority concluded that the doctrine of equitable adoption was preempted by the Utah Legislature's adoption of the Utah Uniform Probate Code. *Id.* ¶ 16.

¶ 31 Unlike the Probate Code at issue in *Hannifin,* the UUPA does not include a provision expressly supplementing the UUPA with principles of equity. Instead, the UUPA provides, "This chapter is a uniform law. In applying and construing this chapter, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among the states that enact it." Utah Code Ann. § 78B–15–901. The general supplementation of the UUPA with Utah common law would not advance the legislature's goal of uniformity among the states that have adopted the uniform act. However, with respect to section 607's limitations on the persons permitted to challenge

---

**16.** Two justices "disagree[d] with the majority's conclusion that it is 'impossible' to follow both the doctrine of equitable adoption and Utah's version of the Uniform Probate Code." *In re Estate of Hannifin,* 2013 UT 46, ¶ 34, 311 P.3d 1016 (Durham, J., dissenting).

paternity of a child born into a marriage with a presumed father, Utah has deviated from the uniform act. *See supra* ¶¶ 18–19, 22. Therefore, further deviation from the uniform act by supplementation with Utah common law would not significantly undermine the goal of uniformity.

¶ 32 Furthermore, the Utah Legislature has chosen to advance some policies consistent with Utah's common law by its adoption of the UUPA. In particular, the limitation incorporated in section 607 furthers the intent of "preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity." *See Schoolcraft*, 799 P.2d 710, 713 (Utah 1990). These policy concerns are also reflected in section 608 of the UUPA. Section 608 allows a tribunal to deny or disregard genetic testing based on principles of estoppel, the inequities of disrupting preexisting relationships with the child, and the best interest of the child. Utah Code Ann. § 78B–15–608. Notably, however, these factors are to be applied once standing has been established, not as a method of determining standing. *Cf. Balentine v. Gehring*, 2007 UT App 226, ¶ 12 n. 2, 164 P.3d 1269 ("[A]n estoppel argument is not appropriate prior to a standing determination . . . .").

¶ 33 In the UUPA, the Utah Legislature has limited the right to challenge the paternity of a child with a presumed father to the presumed father and the mother, so long as no divorce proceedings have been filed. Consequently, the common law conflicts with the standing provisions adopted by the Utah Legislature. *Cf. In re Estate of Hannifin*, 2013 UT 46, ¶ 16, 311 P.3d 1016. The Utah Legislature's rejection of the broad standing permitted by the uniform language of section 607, *see supra* ¶ 19, combined with its express statement in section 204 that a presumption of paternity "may only be rebutted in accordance with Section 78B–15–607," Utah Code Ann. § 78B–15–204(2), leaves no room for expansion of standing to challenge the paternity of a child with a presumed

father under the *Schoolcraft* analysis. As in *Hannifin*, applying the common law *Schoolcraft* analysis would allow some alleged fathers "who cannot satisfy the [UUPA's standing requirements] to nonetheless participate in [a paternity action] as if they had." *See Hannifin*, 2013 UT 46, ¶ 15, 311 P.3d 1016. Furthermore, "it is impossible to satisfy both the requirements of the [UUPA] and the [*Schoolcraft* analysis]," *see id.* ¶ 16, because section 204 states plainly that a presumption of paternity can only be challenged as provided in section 607 and section 607 limits standing prior to filing an action for divorce to two persons: the presumed father and the mother, *see supra* ¶ 26. To allow R.P. to challenge the child's paternity under *Schoolcraft* would be to permit him to pursue an action expressly foreclosed by the UUPA and contrary to the Utah Legislature's rejection of the uniform act's allowance of a challenge to a presumed father's paternity raised by "another individual" while the marriage is intact.

¶ 34 This conclusion accords with the amendment history of Utah's paternity statutes. As noted above, *see supra* ¶ 10, the Uniform Act on Paternity was in effect when the Utah Supreme Court decided *Schoolcraft* in 1990. *See* Utah Code Ann. §§ 78–45a–1 to –7 (Michie 1990). At that time, the Uniform Act on Paternity did not address the concept of a presumed father. But the "Husband and Wife" title of the Utah Code stated, "Except as provided in Section 78–45a–1, children born to the parties after the date of their marriage shall be deemed the legitimate children of both of the parties." *Id.* § 30–1–17.2(2) (Michie Supp.1990).[17] The exception found in section 78–45a–1 of the Uniform Act on Paternity addressed the "[o]bligations of the father" of a child born outside of marriage and stated, "For purposes of child support collection, a child born outside of marriage includes a child born to a married woman by a man other than her husband *if that paternity has been established.*" *Id.* § 78–45a–1 (Michie 1990) (em-

---

**17.** *Schoolcraft* was issued October 19, 1990. *Schoolcraft*, 799 P.2d 710, 710 (Utah 1990). The limitation "Except as provided in Section 78–45a–1" was added effective April 23, 1990. *See* Utah Code Ann. § 30–1–17.2(2) & amend. notes

(Michie Supp.1990). The statute previously stated, "The children born to the parties after the date of the marriage shall be deemed the legitimate children of both of the parties for all purposes." *Id.* § 30–1–17.2 (Michie 1989).

phasis added).[18] The Uniform Act on Paternity codified the procedure for establishing paternity, providing that it could "be determined upon the petition of the mother, child, *putative father,* or the public authority chargeable by law with the support of the child." *Id.* § 78–45a–2 (Michie 1990) (emphasis added).[19] Thus, the statute in place when our supreme court decided *Schoolcraft* expressly permitted an alleged father, such as R.P., to file a petition to establish his paternity. *See id.* Furthermore, the prior Uniform Act on Paternity did not contain a limitation to that general standing provision similar to section 607 of the UUPA. *Compare id.* § 78–45a–2 (Michie 1990), *with* Utah Code Ann. §§ 78B–15–602, –607. *See also Balentine,* 2007 UT App 226, ¶ 9, 164 P.3d 1269 (recognizing that the Uniform Act on Paternity conferred standing on a man asserting paternity of a child born during the mother's marriage to another man without any limitation analogous to that "arguably impose[d]" by the UUPA). The only limitation on the broad standing provision of the Uniform Act on Paternity was found in the common law.

¶ 35 In 2005, when the Utah Legislature repealed the Uniform Act on Paternity and adopted the UUPA, *see* Utah Code Ann. §§ 78–45g–101 to –902 (LexisNexis Supp. 2005) (renumbered in 2008 as sections 78B–15–101 to –902), it codified the concept of a "presumed father" in the UUPA itself and expressly limited the persons who could challenge that presumption at any time prior to proceedings to dissolve the marriage, *see* Utah Code Ann. §§ 78B–15–204, –607. The Utah Legislature also amended title 30, "Husband and Wife," to include language identical to that in section 204 of the UUPA establishing the presumption of paternity. *Compare id.* § 30–1–17.2(2)(a) (LexisNexis 2013), *with* Utah Code Ann. § 78B–15–204(1)(a). In addition, title 30 now contains language incorporating the limited right to challenge that presumption as found in section 78B–15–607. *See id.* § 30–1–17.2(4) (LexisNexis 2013) ("A presumption of paternity established under this section may only be rebutted in accordance with *Section 78B–15–607.*" (emphasis added)). These revisions to the Utah Code convince us that the standing limitations of the UUPA should not be supplemented with the common law.[20]

¶ 36 Husband and Wife have decided to remain married and to raise the child as Husband's own—a legal presumption that has not been rebutted. The Utah Legislature, by adopting this state's version of section 607, has allowed them to do so free from attack by an outsider to the marriage. The UUPA limits the right to raise the paternity of the child to Husband and Wife. Because affording a similar right to R.P. is directly contrary to the limitation provided in the UUPA, we are convinced that the *Schoolcraft* analysis has been preempted by the UUPA.

---

18. The phrases "For purposes of child support collection" and "if that paternity has been established" were added effective April 23, 1990. *See* Utah Code Ann. § 78–45a–1 & amend. notes (Michie 1990).

19. "Putative father" was added effective April 23, 1990. *See* Utah Code Ann. § 78–45a–2 & amend. notes (Michie 1990).

20. The Utah Supreme Court acknowledged the preemption issue but did not resolve it in *Pearson II,* 2008 UT 24, 182 P.3d 353. The majority applied the *Schoolcraft* analysis because the parties had not briefed or argued the application of the UUPA. *See id.* ¶ 10 n. 8; *see also Pearson I,* 2006 UT App 128, ¶ 5, 134 P.3d 173 (indicating that the paternity challenge was initiated before the effective date of the UUPA). In a concurring opinion, Justice Nehring noted, "With the [UUPA] in place, ... we are in this case endorsing a significant development in the common law that may endure only long enough for litigants to properly stage a showdown between the common law and statutory approaches to determining standing in parentage cases." *Pearson II,* 2008 UT 24, ¶ 36, 182 P.3d 353 (Nehring, J., concurring). Chief Justice Durham dissented, concluding that "the result under either [version of the statute] would be the same," that the appeal should have been resolved under the UUPA, and that the UUPA had preempted the common law. *Id.* ¶¶ 38–39, 45 (Durham, C.J., dissenting). Although Chief Justice Durham ultimately concluded that the alleged father in *Pearson* could raise the paternity of the child despite the existence of a presumed father, *see id.* ¶ 41, the facts of the present case are easily distinguishable. In *Pearson,* the married couple had filed for divorce and the mother had challenged the husband's paternity in her response to the divorce petition. *See Pearson I,* 2006 UT App 128, ¶ 5, 134 P.3d 173. Accordingly, section 607's limitations did not apply. *See* Utah Code Ann. § 78B–15–607(1); *see also supra* ¶ 26 n. 13.

*See Hannifin,* 2013 UT 46, ¶ 10, 311 P.3d 1016; *Pearson II,* 2008 UT 24, ¶ 45, 182 P.3d 353 (Durham, C.J., dissenting) ("I would abandon the *Schoolcraft* analysis and defer to the legislative scheme.").

### IV. The Effect of Wife's Counterpetition on R.P.'s Standing

 ¶ 37 R.P. argues alternatively that even if he did not have standing to raise the issue of paternity, Wife raised it by her answer and counterpetition and in the Agreement. R.P. first contends that he has standing under the UUPA because Wife admitted in her response to his initial petition and in the Agreement that R.P. is the natural father of the child. R.P. argues this is a judicial admission and is also binding against Husband because Husband was aware of the Agreement under which R.P. paid child support and exercised parent time with the child. While these facts may be significant under a common law *Schoolcraft* analysis, a constitutional challenge, or an estoppel analysis conducted after standing is established, they do not establish standing under the UUPA.

¶ 38 Although the Agreement was filed, there is no indication that it was approved by the district court. As a result, the Agreement is not binding under the UUPA. *See* Utah Code Ann. § 78B–15–115 ("An agreement of settlement with the alleged father is binding only when approved by the tribunal."). Likewise, there has been no adjudication of R.P.'s paternity. *See id.* § 78B–15–201(2)(c) (providing that the father-child relationship can be established by an adjudication of a man's paternity). "The paternity of a child having a presumed father," such as the child in this case, "may be disproved only by admissible results of genetic testing excluding [the presumed father] as the father of the child or identifying another man as the father of the child." *See id.* § 78B–15–617(1). R.P. admits that there has been no genetic testing of the child in this case. Consequently, there could not have been an order rejecting the marital presumption and adjudicating R.P. to be the child's father, and R.P. has not identified any such order in the record. *See id.* § 78B–15–622(1) ("The tri-bunal shall issue an order adjudicating whether a man alleged or claiming to be the father is the parent of the child.").

 ¶ 39 R.P. next contends that Wife's counterpetition constituted a challenge to Husband's paternity. Although R.P. does not have standing to raise the child's paternity while the couple's marriage is intact, Wife does. We agree with R.P. that the counterpetition expressly raised the child's paternity, as Wife is empowered to do under section 607. *See id.* § 78B–15–607(1). However, R.P. may no longer obtain relief under Wife's counterpetition because it has been dismissed.

¶ 40 In response to R.P.'s petition to establish paternity, Wife filed a counterpetition in which she admitted that R.P. is the child's "natural father" and sought affirmative relief in the form of "a Decree of Paternity." R.P. filed an answer to the counterpetition, admitting that he is the child's father and conceding that Wife should have sole custody, subject to his parent time, but contesting some of the terms requested by Wife. While these matters were pending, R.P. and Wife participated in mediation and executed the Agreement resolving these issues. The Agreement was filed with but not approved by the district court. Five months later, Wife filed a motion to set aside the Agreement and a motion to dismiss for lack of standing, or, in the alternative, for summary judgment. The motions were heard by the domestic relations commissioner, who recommended denying them. After Husband was joined as a party, he and Wife filed objections to the commissioner's recommendation with the district court. Before that matter could be heard, Wife filed a voluntary withdrawal of her counterpetition. After full briefing and argument, the district court dismissed R.P.'s petition for lack of standing. It also stated in its order of dismissal that Wife had filed a voluntary withdrawal of her counterpetition, "thereby dismissing [her] claims against [R.P.]."

¶ 41 Although R.P. correctly argues that Wife raised the issue of the child's paternity, the counterpetition was later dismissed. Rule 41 of the Utah Rules of Civil Procedure governs the voluntary dismissal of an action,

including "any counterclaim, cross-claim, or third-party claim." Utah R. Civ. P. 41(a), (c). A counterclaimant may voluntarily dismiss an action without court order so long as she does so "before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing." *Id.* Once the adverse party has responded, however, the counterclaim may only be dismissed "on order of the court." *Id.* R. 41(a)(2). The court may dismiss a counterclaim to which the adverse party has responded based either on "a stipulation of all the parties who have appeared in the action" or "upon such terms and conditions as the court deems proper." *Id.* R. 41(a)(2); *see also Nu–Med USA, Inc. v. 4Life Research, LC,* 2008 UT 50, ¶ 7, 190 P.3d 1264.

¶ 42 There is nothing in the record which indicates that R.P. stipulated to Wife's voluntary dismissal of the counterpetition. Therefore, the district court "ha[d] discretion to set the terms and conditions of a dismissal." *Nu–Med USA,* 2008 UT 50, ¶ 7, 190 P.3d 1264. In *Rohan v. Boseman,* 2002 UT App 109, 46 P.3d 753, this court adopted the analytical framework applied by the Tenth Circuit to determine whether a district court exceeded its discretion in dismissing a claim to which the adverse party has responded. *Id.* ¶¶ 21–22. Under that approach, a district court should grant a dismissal unless the dismissal would cause legal prejudice to the nonmoving party. *Id.* ¶ 21 (citing *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir.1997)). The factors which guide a district court's determination of whether a party will be prejudiced by dismissal of the action are " '[1] the opposing party's effort and expense in preparing for trial; [2] excessive delay and lack of diligence on the part of the movant; [3] insufficient explanation of the need for a dismissal; and [4] the present stage of the litigation.' " *Id.* (quoting *Ohlander,* 114 F.3d at 1537). Had the district court considered these issues, it may have denied the motion to dismiss and instead considered the factors described in the UUPA to determine whether genetic testing should be ordered to resolve the child's paternity. *See generally* Utah Code Ann. § 78B–15–608 (setting forth factors that the tribunal should consider in determining

whether to permit or admit genetic testing). However, there is no indication that the district court undertook this analysis. Instead, it appears that the court simply accepted Wife's voluntary withdrawal of her counterpetition.

¶ 43 Nevertheless, R.P. did nothing to call the requirements of rule 41 to the attention of the court or to object to the district court's acceptance of Wife's withdrawal of her counterpetition. Likewise, he has not raised rule 41 or challenged the district court's acceptance of Wife's voluntary dismissal of the counterpetition on appeal. Accordingly, we do not consider the effect of Wife's counterpetition further. *See State v. Low,* 2008 UT 58, ¶ 17, 192 P.3d 867 ("Where there is no clear or specific objection and the specific ground for objection is not clear from the context[,] the theory cannot be raised on appeal." (alteration in original) (citation and internal quotation marks omitted)).

CONCLUSION

¶ 44 By adopting a version of section 607 that limits permission to raise paternity, the Utah Legislature has preempted the common law and indicated its intention to prevent a challenge to the paternity of a child born into a marriage from an outsider to the marriage any time prior to the initiation of divorce proceedings. Because Husband and Wife have decided to remain married and to raise the child as issue of the marriage, R.P. lacks statutory authority to raise the child's paternity. R.P. has asserted no constitutional challenge to the limitations contained in section 607, nor did he object to the dismissal of the counterpetition in which Wife raised the issue of paternity.

¶ 45 Affirmed.